Daniel B. SOLIZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A04–0412–CR–696.

Court of Appeals of Indiana.

Aug. 17, 2005.

Transfer Denied Nov. 9, 2005.

---

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Daniel B. Soliz appeals his conviction for Possession of Methamphetamine in Excess of Three Grams with Intent to Deliver,[1] a class A felony, raising three allegations of error. Specifically, Soliz contends that the evidence seized from his residence was improperly admitted into evidence because there was no probable cause for the issuance of the search warrant, that the jury verdict should have been set aside, and that he was improperly sentenced. Finding no error, we affirm the judgment of the trial court.

*FACTS*

On September 15, 2002, Goshen Police Officer Ward Branson submitted an affidavit for the search of Soliz's residence at 25632 Thelmadale Drive in Elkhart County for evidence related to the commission of possession and distribution of methamphetamine and/or cocaine. The probable cause section of the warrant was based partly on an informant's report that led to the traffic stop of a truck whose passenger informed police officers that Soliz had sold methamphetamine to her on numerous occasions since December 2001.

The affidavit stated that Sergeant Shawn Turner of the Goshen Police Department had received information from an individual who had supplied reliable and accurate information in the past to him and the Goshen Drug Unit regarding prior narcotics investigations. The information asserted that a red Ford pick-up truck was traveling to Goshen on State Road 15 on September 15, 2002, and that the occupants possessed a quantity of methamphetamine.

At some point, the officers stopped the truck that the informant had described for a loud or faulty exhaust system. A male was driving the truck, and Rose Baker was riding as a passenger. When the officers searched the truck after a K–9 unit had alerted to the presence of a controlled substance, they found a hubcap containing methamphetamine. The two were then arrested, separated and transported to the Goshen Police Department for further questioning. Field tests were conducted on the substance that had been seized which tested positive for methamphetamine. During questioning, Baker implicated Soliz as the source for the methamphetamine. She stated that Soliz formerly lived on Cassopolis Street in Elkhart but

---

1. Ind.Code § 35–48–4–1.

currently lived on Thelmadale Drive close to a lake. The driver of the truck informed the police officers when he was questioned separately that Baker had instructed him to drive her to a residence near Simonton Lake in Elkhart County. Baker also related to the police that she had her friend drive to Soliz's residence on Thelmadale Drive on September 14, 2002, to buy some methamphetamine. Baker was able to correctly identify Soliz's residence, his vehicle, and his girlfriend's car that was parked at the house. Baker also informed the officers that she had been purchasing various quantities of methamphetamine from Soliz on a regular basis beginning in December 2001.

On September 15, 2002, Baker placed a police-monitored telephone call to Soliz at his residence, where Soliz agreed to sell her an ounce of methamphetamine. Soliz told Baker that she should bring him the money that she owed him from the previous day's transaction. Based upon the above information, the trial court issued the search warrant and the police officers executed it later that day when Soliz, his sister, his girlfriend, and a child were at the residence. Soliz was taken into custody at the time, and he was carrying $646 in cash. Officers Turner and Keith Miller seized large amounts of paraphernalia from an upstairs bedroom including glass smoking pipes, syringes and balloons. Officer Miller also found a white, powdery rock-like substance that he believed to be methamphetamine, as well as some plant-like material that he thought was marijuana. The officers found ledgers containing various names as well as $2,700 in cash and a small electronic scale. The white substance found in the bedroom in a clear plastic bag was found to contain 102.52 grams of methamphetamine.

Soliz subsequently moved to suppress the evidence that was seized from his residence, alleging that insufficient probable cause existed for the issuance of the warrant because the credibility of the informant had not been sufficiently demonstrated. The trial court denied Soliz's motion on the basis that the informant had provided sufficient information to establish probable cause.

On the first day of the trial, Soliz was late for court. As a result, the trial court advised that "we're going to start at 8:30 in the morning whether you're here or not." Tr. p. 2. On the second day, Soliz failed to appear, and the trial proceeded in his absence. In the end, Soliz was found guilty as charged.

Inasmuch as the trial proceeded in his absence, Soliz moved to set aside the verdict at the beginning of his sentencing hearing. However, the trial court noted that Soliz had filed a written acknowledgement of the trial setting where he affirmed under oath his obligation to appear as well as his compliance and cooperation with all requirements of the court to be present at the proceedings. The trial court also reminded Soliz of the warning that he had issued when Soliz was late on the first day of trial. The trial court then denied Soliz's motion to set aside the verdict. The matter proceeded to sentencing, and the trial court found nine aggravating factors and two mitigating circumstances. It was then determined that the aggravators outweighed the mitigators, and an enhanced sentence of forty-five years was imposed. Soliz now appeals.

## DISCUSSION AND DECISION

### I. Issuance of Search Warrant

■ Soliz first contends that his conviction must be reversed because there was no probable cause supporting the issuance of the warrant to search his residence. In essence, Soliz maintains that the warrant was improperly issued because the affidavit was based solely upon Baker's state-

ments, and her reliability as an informant had not been established.

■■■ We first note that in deciding whether a search warrant should be issued, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Query v. State*, 745 N.E.2d 769, 771 (Ind.2001). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Bowles v. State*, 820 N.E.2d 739, 747 (Ind. Ct.App.2005), *trans. denied.* We will give significant deference to the magistrate's determination and focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Best v. State*, 821 N.E.2d 419, 426 (Ind.Ct.App.2005), *trans. denied.*

Next, we note that Indiana Code section 35–33–5–2 provides in relevant part that:

(a) Except as provided in section 8 of this chapter, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:

(1) particularly describing:

(A) the house or place to be searched and the things to be searched for; or

(B) particularly describing the person to be arrested;

(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things as are to be searched for are there concealed; or

(B) the person to be arrested committed the offense; and

(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

(b) When based on hearsay, the affidavit must either:

(1) *contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or*

(2) *contain information that establishes that the totality of the circumstances corroborates the hearsay.*

(Emphasis added).

■■■ With respect to the above, our Supreme Court has determined that uncorroborated hearsay from a source whose credibility is itself unknown cannot support the finding of probable cause to issue a search warrant. *Jaggers v. State*, 687 N.E.2d 180, 182 (Ind.1997) (citing *Illinois v. Gates*, 462 U.S. 213, 227, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The court in *Gates* indicated that the trustworthiness of hearsay for purposes of proving probable cause can be established in a number of ways, including where: (1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. *Gates*, 462 U.S. at 227, 103 S.Ct. 2317. When based on hearsay, a probable cause affidavit must establish the credibility of the informant and contain information establishing that the totality of the circumstances corroborates such evidence. *Cutter v. State*, 646 N.E.2d 704, 713 (Ind.Ct. App.1995), *trans. denied.* In essence, the hearsay must exhibit some hallmarks of reliability. *Richard v. State*, 820 N.E.2d 749, 753 (Ind.Ct.App.2005), *trans. denied.*

■■■ Our courts have also observed that there are two categories of informants: professional informants and cooperative

citizens. *Clifford v. State,* 474 N.E.2d 963, 969 (Ind.1985). The test for determining the reliability of each group of informant is different. In particular, cooperative citizens who act as informants

> include[ ] victims of crime or persons who personally witness a crime. These individuals generally come forward with information out of the spirit of good citizenship and the desire to assist law enforcement officials in solving crime. They are usually one-time informants and no basis exists from prior dealings to determine their reliability. Further, information of this type usually goes to past completed crimes rather than future or continuing crimes. Some jurisdictions have therefore held that informants of this type are to be considered reliable for the purpose of determining probable cause unless incriminating circumstances exist which cast suspicion upon the informant's reliability.

*Richard,* 820 N.E.2d at 754 (quoting *Pawloski v. State,* 269 Ind. 350, 354, 380 N.E.2d 1230, 1232–33 (1978)). By the same token, "the requirement for corroboration is not totally eliminated. The amount of evidence necessary to satisfy the probable cause test is largely determined on a case-by-case basis." *Pawloski,* 269 Ind. at 355, 380 N.E.2d at 1233.

Turning to the merits here, the trial court correctly observed that the separate information obtained from Baker and the driver of the van was corroborative of each other. In particular, Baker and the driver separately informed the police officers that the methamphetamine was Baker's and not the driver's. Tr. p. 229. Baker named Soliz as her source for the drugs and stated that Soliz formerly lived on Cassopolis Street in Elkhart but currently lived on Thelmadale Drive near Simonton Lake. Appellant's App. p. 51–52. Baker indicated that she had her friend drive her to Soliz's residence on September 14, 2002, to obtain methamphetamine. Appellants'

App. p. 52. And the driver of the van separately acknowledged that he drove Baker to a residence on Thelmadale. Tr. p. 222, 248.

Additionally, the basis of Baker's knowledge of Soliz's changing address and the vehicles present at his house is apparent from her statement that she had purchased methamphetamine every weekend, approximately thirty to forty times, starting in December 2001. Also, the trial court correctly determined that because the driver and Baker had been separated following the arrest, there was no opportunity for them to discuss their version of the events together. This evidence indicates the reliability and corroborative aspect of the separate statements, particularly because Baker made statements against her penal interests, which could have subjected her to incarceration for various offenses.

Also, the recorded conversation with Soliz, where he agreed to sell Baker methamphetamine while also confirming that he had done so the day before, corroborates Baker's statements that she had purchased methamphetamine from Soliz in the location that she had described to the police. While the record shows that Baker was not a "professional informant," or known to the police before the investigation, the probable cause affidavit shows that her statements were corroborated by further police investigation. Tr. p. 220–21, 259–62. Inasmuch as the affidavit contained accurate, corroborated information, it was reasonable for the issuing magistrate to conclude that there was a reasonable probability that contraband or evidence of a crime would be found at Soliz's residence. Hence, we conclude that there was adequate probable cause for the issuance of the search warrant. As a result, the trial court properly admitted the methamphetamine into evidence.

## II. Setting Aside of Verdict

■ Soliz next argues that his motion to set aside the guilty verdict should have been granted. Specifically, Soliz contends that his trial improperly proceeded in his absence because there was no showing that he had knowingly or voluntarily waived his right to be present.

■ Generally, a criminal defendant has a right to be present at all stages of the trial. *Lampkins v. State,* 682 N.E.2d 1268, 1273 (Ind.1997). However, a defendant may waive this right and be tried in absentia if the trial court determines that the defendant knowingly and voluntarily waived that right. *Id.* The trial court may presume a defendant voluntarily, knowingly and intelligently waived his right to be present and try the defendant in absentia upon a showing that the defendant knew the scheduled trial date but failed to appear. *Ellis v. State,* 525 N.E.2d 610, 611–12 (Ind.Ct.App.1987). The best evidence of this knowledge is the defendant's presence in court on the day the matter is set for trial. *Fennell v. State,* 492 N.E.2d 297, 299 (Ind.1986). By the same token, a defendant who has been tried in absentia must be afforded an opportunity to explain his absence and thereby rebut the initial presumption of waiver. *Ellis,* 525 N.E.2d at 612. This does not require a sua sponte inquiry; rather, the defendant cannot be prevented from offering an explanation. *Hudson v. State,* 462 N.E.2d 1077, 1081 (Ind.Ct.App.1984). As a reviewing court, we consider the entire record to determine whether the defendant voluntarily, knowingly, and intelligently waived his right to be present at trial. *See Reel v. State,* 567 N.E.2d 845, 846 (Ind.Ct.App.1991). Finally, a defendant's explanation of his absence is a part of the evidence available to a reviewing court in determining whether it was error to try him in absentia. *Fennell,* 492 N.E.2d at 299.

In this case, Soliz offered the following reasons as to why he failed to appear for the second day of trial: (1) he could not start his vehicle; (2) his fiancée was sick and he had to take her to the hospital; and (3) he believed that his attorney's representation was inadequate. Sent. Tr. p. 12–14, 36–37. As pointed out in the *FACTS,* the record demonstrated that Soliz knew of the trial date. Sent. Tr. p. 25, 36–37. Despite this awareness, Soliz neither made an attempt to contact the court or his attorney the second day of trial to explain his absence. Even more compelling, Soliz did not make any attempt to appear for trial on the second day when he had ample opportunity to do so. In particular, the evidence showed that while Soliz initially went to the hospital with his fiancée and her mother at approximately 8:30 a.m. on the second day of the trial, his fiancée's mother could have stayed with her while Soliz proceeded to court. Sent. Tr. p. 14. Soliz explained that he did not contact the court or his attorney because he was concerned about his fiancée and time "got away" from him. Sent. Tr. p. 14. Soliz went on to testify that while he could have arrived at the courtroom by 11:00 a.m., he chose not to because he was of the belief that he was not "legally represented right" and felt unprepared for trial. Sent. Tr. p. 14–15.

Notwithstanding these explanations regarding his failure to appear, Soliz did not alert the trial court about his concerns with the adequacy of representation when the trial first commenced. Moreover, Soliz's fiancée testified that after Soliz arrived home from the hospital with her, he made no effort to telephone the trial court or travel there. Sent. Tr. p. 34. Instead, Soliz left the residence in an attempt to find a part for his vehicle. Sent. Tr. p. 27, 31.

Given these circumstances, it is our view that Soliz had no intention of appearing on the second day of trial, despite the numerous excuses that he later provided to the trial court. Sent. Tr. p. 12–14, 36–37. As a result, we conclude that the trial court properly denied Soliz's motion to set aside the jury verdict.

### III. Sentencing

Finally, Soliz asserts that he was improperly sentenced. In particular, Soliz maintains that the trial court erroneously considered an element of the offense—the quantity of the drug that was seized—as an aggravating circumstance when deciding to enhance the sentence.

First, we note that sentencing decisions rest within the discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Buchanan v. State*, 767 N.E.2d 967, 970 (Ind.2002). It is within the trial court's discretion to determine whether a presumptive sentence will be enhanced in light of aggravating factors. *Id.* When the trial court does enhance a sentence, it must (1) identify significant aggravating and mitigating circumstances; (2) state the specific reasons why each circumstance is aggravating or mitigating; and (3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances. *Id.*

Additionally, our Supreme Court has determined that a single aggravating circumstance may be sufficient to support an enhanced sentence. *Walter v. State*, 727 N.E.2d 443, 448 (Ind.2000). And a defendant's prior criminal history alone can support an enhanced sentence. *Buchanan v. State*, 699 N.E.2d 655, 657 (Ind.1998). Finally, an enhanced sentence may be upheld when a trial court improperly finds an aggravator but other valid aggravators exist. *Guillen v. State*, 829 N.E.2d 142, 149 (Ind.Ct.App.2005).

Turning to the circumstances here, the trial court identified the following aggravating circumstances at Soliz's sentencing hearing: (1) Soliz violated a court order when he refused to provide monthly verifications of his assets and income; (2) Soliz's prior felony conviction and sentence for delivery of cocaine was similar in nature to the instant offense; (3) Soliz's other prior felony conviction that involved the burglary of a vehicle in Texas shows his unwillingness to abide by the law; (4) the amount of methamphetamine in this case was approximately thirty times greater than the amount needed for a class A felony; (5) Soliz is in need of correctional treatment that can only be provided by a penal institution because he failed to take advantage of his prior rehabilitation opportunities; (6) Soliz's frequent distribution of drugs since 2001, including thirty to forty sales to a single individual, indicates his character and inability to abide by the law; (7) the fact that other drugs besides methamphetamine were found, including marijuana, shows Soliz's inability to abide by the law; (8) an infant child was present in an environment where Soliz conducted the drug transactions; and (9) Soliz admitted to police officers that he had distributed nearly a pound of methamphetamine immediately preceding this offense. Sent. Tr. p. 46–50. The trial court then identified Soliz's drug addiction and the fact that he has a dependent minor child as mitigating circumstances. In the end, it was determined that the aggravators substantially outweighed the mitigators, and the trial court imposed a forty-five year sentence.

Soliz correctly observes that elements of the crime cannot be used to enhance a sentence. *See Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind.1996). That said, even if the trial court improperly considered the amount of methamphetamine that was seized as an aggravating

circumstance in this case, Soliz has failed to challenge the propriety of the other aggravators that were found.[2] Hence, when considering the remaining aggravating circumstances that were found along with the two mitigating factors, we conclude that the trial court did not err in sentencing Soliz to forty-five years.

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J., concur.

**2.** Soliz points out that he does not challenge the propriety of the other aggravators that were identified by the trial court because his sentencing occurred before *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004) and *Smylie v. State,* 823 N.E.2d 679, 682 (Ind.2005) were decided, which hold that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Even so, Soliz's criminal history and several other factors identified by the trial court as aggravating factors derivative of that history are exempt from the *Blakely* analysis. *See Abran v. State,* 825 N.E.2d 384, 393 (Ind.Ct.App.2005) (recognizing that the defendant's need for rehabilitation best provided by incarceration and the likelihood that he will commit another crime are derivative of his criminal history and, therefore, do not require proof beyond a reasonable doubt); *see also Guillen v. State,* 829 N.E.2d 142, 149 (Ind.Ct.App.2005) (holding that the single aggravating factor of the defendant's criminal history was sufficient to justify an enhanced sentence).