**Amir H. SANJARI, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A03–1007–CR–384.

Court of Appeals of Indiana.

Feb. 11, 2011.

Transfer Denied May 6, 2011.

Transfer Granted May 6, 2011.

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

CRONE, Judge.

### Case Summary and Issues

This case involves a father's failure to pay child support for his two children. The father, a nuclear physicist, not only did not pay support as ordered, but he also left the jurisdiction, moving to at least three different states to avoid extradition on an arrest warrant for felony nonsupport of a dependent child. He eventually was located in California and extradited to Indiana, where he was put in jail pending trial.

While in jail, the father went on a hunger strike, repeatedly asserted his right to represent himself, repeatedly rejected standby counsel, and repeatedly accused the trial court of wrongdoing. As trial approached, he said that he felt ill and wanted a certain attorney to represent him. The attorney was not licensed in Indiana, and the trial court granted the father's request for a continuance so that his attorney could attempt to gain admission as out-of-state counsel. The father continued to file motions and act as his own counsel, refusing the help of the standby counsel provided by the court. The trial court refused his request for another continuance right before trial.

As of the day of trial, the father's out-of-state attorney had filed two defective requests for admission in Indiana, and the father refused to leave his jail cell to attend the trial. The trial court consulted with employees from the jail, who said that the father had been ill but no longer was ill on the day of trial. The trial court tried the case without the father present, and a jury found him guilty of four counts of felony nonsupport of a dependent.

At sentencing, the trial court merged the two class D felony counts into the two class C felony counts and sentenced him to two consecutive five-year terms. The father filed a motion to correct error, which the trial court denied.

The father, Amir R. Sanjari, now appeals, claiming that the trial court erred in conducting the trial in his absence, in denying his second motion for continuance to hire new counsel, in entering judgment on two counts of nonsupport, and in sentencing him to an aggregate ten-year term. We vacate his conviction and sentence on Count II. In all other respects, we affirm.

### Facts and Procedural History

In 1982, Sanjari married Alison Gratzol in London. After Sanjari earned a doctorate in nuclear physics, the couple relocated to Switzerland. They had two children: A.S., born in 1988, and M.S., born in 1992. In 1992, the family relocated to the United States, where Sanjari worked for the State University of New York and then the University of Notre Dame. In 1996, they

moved to Elkhart, where Sanjari started a computer business.

Sanjari and Gratzol separated in 1999 and divorced in 2000. During that time, Sanjari worked as a medical physicist at a cancer treatment center in Goshen. Initially, the couple had joint custody, but Gratzol obtained sole custody in 2001. From 2002 to 2005, the long legal battle continued regarding custody and child support. During this timeframe, Sanjari sought relief from federal courts and federal agencies against what he later described as a "train of conspiracy" against him by Gratzol and by Indiana trial and appellate courts. Tr. Aug. 27, 2009 Hrg. at 5–10.[1] According to the property distribution order, he was required to pay an "in gross" amount of $175 per week for support of both children. His support obligation rose to $239 per week by 2002. As of 2005, Sanjari's child support payments were irregular, and by summer 2006, he had ceased paying support altogether.[2]

On October 13, 2006, the State charged Sanjari with two counts of class C felony nonsupport of a dependent child. Sanjari remained at large until March 2009, when he was arrested in California and extradited to Indiana.[3] At his initial hearing on July 1, 2009, he waived counsel and asserted his right of self-representation. After warning him of the substantial risks associated with self-representation, the trial court granted his request and appointed standby counsel. Sanjari remained incarcerated throughout the proceedings and, at some point, began a hunger strike. On July 9, 2009, the trial court, acting sua sponte, appointed a guardian ad litem ("GAL") for Sanjari. On July 21, July 27, and August 10, 2009, Sanjari filed motions to vacate/revoke the GAL order. On August 27, 2009, the trial court held a hearing to address his motions and his hunger strike, and Sanjari assured the court that he was taking nutritional supplements in lieu of solid foods. The trial court heard testimony from Sanjari and the GAL and vacated the GAL order. At the hearing, Sanjari also objected to the trial court's appointment of standby counsel "behind [his] back," calling it a "pretext" that rendered his self-representation "neutralized and pointless." *Id.* at 12. Nevertheless, the trial court refused to dismiss standby counsel. In the intervening months between his initial hearing and trial, Sanjari filed numerous pro se motions, objections, and requests for discovery.

In September 2009, the State amended the information to add two counts of class D felony nonsupport of a dependent child. At an October 16, 2009 pretrial hearing, Sanjari complained that he had an ear infection. At an October 22, 2009 hearing, he informed the trial court that he felt ill and requested that the court appoint Saeid Amini as his counsel. Amini, an attorney with offices in Ohio and Washington, D.C., was present in the courtroom at that time. The trial court informed Sanjari that Amini was prohibited from representing him unless he was admitted pro hac vice pursuant to Indiana's rules for out-of-state counsel. The trial court continued the hearing

---

1. The record includes a two-volume transcript on appeal, and each volume contains separate pagination for each separate hearing. Thus, we refer to transcript page numbers according to date of hearing and page number. We direct the court reporter to Indiana Appellate Rule 28(A)(2), which provides that the transcript pages "shall be numbered consecutively regardless of the number of volumes."

2. Sanjari made his last partial child support payment of $40 in June 2006, and he did not provide in-kind support. As of October 31, 2009, his child support arrearage totaled $56,741.

3. In the interim, Sanjari had used addresses in Massachusetts, Georgia, and Minnesota.

to October 29, 2009, and provided Amini with copies of the relevant rules for admission of foreign counsel. The trial court also informed Sanjari that a jury pool had been summoned for the November 9, 2009 trial and that he could submit proposed instructions and jury questions at the upcoming hearing.

During the next week, Sanjari prepared and submitted proposed jury instructions, as well as objections to the State's proposed instructions and motion in limine. He also issued subpoenas for ten witnesses. At the October 29, 2009 hearing, Sanjari filed a motion for a thirty- to sixty-day continuance of the trial date, claiming that standby counsel was unacceptable and that the only acceptable counsel was Amini. The trial court denied his motion.

On November 2, 2009, Amini filed a request for pro hac vice admission, and the trial court denied the motion based on Amini's failure both to designate local counsel to work with him and to submit proof of payment of the required fee. On November 4, 2009, Sanjari filed a motion for change of venue, accusing the trial court of "bias and prejudice" and of attempting to increase welfare reimbursements to the county. Appellant's App. at 851. The trial court denied Sanjari's motion at a November 6, 2009 hearing, during which Sanjari insisted that he was being forced into a "sham trial." Tr. Nov. 6, 2009 Hrg. at 3, 7.

On the day of trial, November 9, 2009, Amini filed a second request for admission pro hac vice, which the trial court denied due to Amini's continued failure to engage local counsel. Standby counsel was present in the courtroom. Just before the start of the trial, the jail's medical staff informed the trial court that Sanjari claimed to be ill and refused to leave his cell or even get dressed for trial. The trial court took testimony under oath from nurse supervisor Maralee Hertel via video connection to the jail. She testified that although Sanjari had had a fever earlier in the week, his temperature was normal on the morning of trial. Trial Tr. at 7. She next explained that Sanjari had experienced health issues, but that they were largely attributable to his failure to take his nutritional supplements. *Id.* She also informed the court that a culture taken of Sanjari's ear tested negative for infection. *Id.* Based on this testimony, the trial court concluded that Sanjari had waived his right to be present at trial, and Sanjari was tried in absentia. Standby counsel was present at trial but did not participate.

The jury found Sanjari guilty as charged, and the trial court held sentencing hearings on April 1 and April 19, 2010. After trial, Amini gained admission pro hac vice and represented Sanjari. At sentencing, the trial court vacated the two class D felony convictions. At the first sentencing hearing, Sanjari addressed his hunger strike, his ear infection, and the allegedly harsh conditions of his cell. Following the second hearing, the trial court imposed consecutive five-year sentences for the two class C felony convictions. The trial court also imposed restitution, court costs, extradition costs, and a fine.

On April 28, 2010, Sanjari filed a motion to depose two nurses from the jail, and the trial court granted the motion following a hearing. The depositions took place on May 11, 2010. On May 12, 2010, Sanjari filed a motion for determination of indigence, which the trial court denied. On May 19, 2010, he filed a motion to publish the nurses' depositions and a motion to correct error, to which he attached the depositions, his medical records, and an affidavit stating his reasons for failing to attend his trial. On June 17, 2010, the trial court denied both motions. This ap-

**140**

## Discussion and Decision

### I. Trial in Absentia

Sanjari first claims that the trial court erred in conducting his trial in absentia. Because he raised the issue as part of his motion to correct error, we review it as such. We review a trial court's denial of a motion to correct error for an abuse of discretion. *Booher v. State*, 773 N.E.2d 814, 817 (Ind.2002). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it or when the court has misinterpreted the law. *James v. State*, 872 N.E.2d 669, 671 (Ind.Ct.App.2007).

Both the United States and Indiana Constitutions afford a criminal defendant the right to be present at all stages of the proceedings against him. U.S. Const. amend. VI; Ind. Const. art. 1, § 13. Nevertheless, a trial court may conduct a defendant's trial in absentia if it determines that the defendant knowingly and voluntarily waived that right. *Jackson v. State*, 868 N.E.2d 494, 498 (Ind. 2007).

> When a defendant fails to appear for trial and fails to notify the trial court or provide it with an explanation of his absence, the trial court may conclude [that] the defendant's absence is knowing and voluntary and proceed with trial when there is evidence that the defendant knew of his scheduled trial date.

*Id.* (citation and quotation marks omitted). "A defendant who has been tried in absentia must be afforded an opportunity to explain his absence and thereby rebut the initial presumption of waiver." *Soliz v. State*, 832 N.E.2d 1022, 1029 (Ind.Ct.App. 2005), *trans. denied*. On review, we consider the entire record, including a defendant's explanation for his absence, to determine whether his waiver was voluntary, knowing, and intelligent. *Id.* An incarcerated defendant's refusal to cooperate with jail staff charged with transporting him to his trial may be deemed a refusal to attend trial. *See Adams v. State*, 509 N.E.2d 812, 815 (Ind.1987) (where defendant claimed unsubstantiated ailments and refused to leave his cell to attend his trial, trial court was justified in finding that he voluntarily waived his right to be present at his trial).

Sanjari does not dispute that he was aware of his trial date. Instead, he asserts that he was physically incapable of attending his trial due to illness and that the nurses' depositions and his medical records constituted newly discovered evidence justifying a new trial. As such, he bore the burden of showing that the newly discovered evidence meets the standard for a new trial. *Martinez v. State*, 917 N.E.2d 1242, 1247 (Ind.Ct.App.2009), *trans. denied* (2010). A motion to correct error based upon the ground of newly discovered evidence

> must be supported by one or more affidavits which must contain a statement of the facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. In ruling whether a piece of evidence would produce a different result, the judge may properly consider the weight that a reasonable trier of fact would give it and, while so doing, may also evaluate its probable impact on a new trial of the case.

*Id.* (citations and quotation marks omitted). "[T]he basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." *Id.* (citation and quotation marks omitted). On review, we give the trial court's decision substantial deference. *Id.*

In its June 17, 2010 order denying Sanjari's motion to correct error, the trial court stated,

> There was nothing that prevented the Defendant from appearing at trial on November 9, 2009 except for his manipulation of his health by refusing to ingest solid food and his nutritional supplement known as "Boost." His temperature was normal, near normal or slightly below normal on November 9, 2009.[4] The testimony at trial on November 9, 2009 and the Court's findings on that date are sufficient in determining Defendant's failure to appear was wil[l]ful.
>
> The defendant was given an opportunity to speak at his sentencing hearings and he did give his explanation for his failure to appear at trial. He also provided an affidavit on March 31, 2010 providing his explanation of his failure to appear *which was considered.* There is no error in regard to the Defendant having the opportunity to provide his explanation of his failure to appear at trial. This court is not persuaded by his statements.

Appellant's App. at 1299–1300 (emphasis added).

Here, the trial court three times gave consideration to Sanjari's reasons for being absent from trial. First, on the day of trial, the court questioned jail nursing supervisor Hertel under oath regarding Sanjari's physical condition that day. The essence of their statements was that, although he had previously been ill, he had no fever on the morning of trial. They also indicated that his previous illness was largely due to his self-imposed hunger strike and failure to take his supplements as promised. The "newly discovered evidence" via medical records and nurses' depositions, although longer and more detailed, basically affirmed the statements on the day of trial and was therefore merely cumulative.[5]

At sentencing, Sanjari claimed that he had had an ear infection and complained about "the particularly severe inhospitable and punishing conditions in my cell even . . . . compared to other inmates in the same building." Tr. April 1, 2010 Hrg. at 28. He also stated that his hunger strike "was not self-inflicted wound or injury." *Id.* With respect to the ear infection, we note that the nurse supervisor told the court on trial day that Sanjari's culture had come back negative for an ear infection. Again, Sanjari's explanation at sentencing merely reiterated what the court already knew: that he had felt ill on days *leading up to* the trial.

Finally, in its June 17, 2010 order, the trial court specifically noted that it had *considered* Sanjari's explanation for his absence advanced in the affidavit accompanying his motion to correct error; the court

---

4. On the morning of trial, Sanjari's temperature was taken three times, with readings of 98.6°, 99°, and 98.3°. Confidential App. at 1155, 1173.

5. For example, the depositions and medical records listed the medications that Sanjari had taken for his illness on the days sur-rounding the trial date as well as his temperatures on days other than the day of trial. However, the information contained in them confirmed the statements previously provided to the court regarding Sanjari's normal temperature readings on the day of trial.

simply was "not persuaded by his statements." *Id.* at 1300. Having witnessed Sanjari's behavior throughout the proceedings, the trial court was in a better position to assess the credibility of his cited excuses. Based on the evidence in the record, we defer to that assessment. In sum, Sanjari failed to meet his burden of establishing that the "newly discovered evidence" was not cumulative or would have produced a different result. Thus, we find no abuse of discretion in the trial court's denial of his motion to correct error regarding whether he knowingly, voluntarily, and intelligently waived his right to be present at trial.

## II. Continuance for Change of Counsel

 Sanjari also challenges the trial court's denial of his motion for continuance. A continuance for the purpose of hiring private counsel immediately before trial is a matter within the trial court's discretion. *Washington v. State*, 902 N.E.2d 280, 286 (Ind.Ct.App.2009), *trans. denied.* We review a trial court's ruling on a motion for continuance using an abuse of discretion standard and will reverse only when an abuse of discretion occurs and prejudice results from it. *Id.* In general, continuances for additional time to prepare for trial are disfavored, and trial courts are cautioned against granting such motions unless good cause is shown and a continuance is in the interest of justice. *Schmid v. State*, 804 N.E.2d 174, 177–78 (Ind.Ct.App.2004), *trans. denied.* "Continuances sought shortly before trial to hire a new attorney are disfavored because they cause substantial loss of time for jurors, lawyers and the court." *Id.* at 177.

Here, Sanjari sought and was granted a one-week continuance on October 22, 2009, when he first indicated that he wanted Amini to represent him. The trial court not only granted the continuance, but it also instructed Sanjari that Amini could not represent him without first being admitted under Indiana's rules for temporary admission of out-of-state counsel and provided Amini with a copy of the applicable rules. The trial court also informed Sanjari that the jury had been summoned for his upcoming November 9, 2009 trial and that he could submit proposed jury instructions and questions at the October 29, 2009 hearing.

In the intervening week, Sanjari prepared the proposed jury instructions and questions as well as objections to the State's motion in limine. He also subpoenaed ten witnesses. However, Amini did not file a request for temporary admission during that week. At the October 29 hearing, Sanjari filed another motion for continuance, asserting that Amini was "the only acceptable attorney" and that Sanjari "would not accept any other attorney . . . including the current stand-by counsel." Appellant's App. at 808, 810. Sanjari stated that Amini was still in the process of obtaining the necessary proof of good standing in his home state of Ohio and would need thirty to sixty days to prepare for trial. Sanjari also indicated that settlement negotiations were in process. At the close of the hearing, the trial court indicated that Amini's appearance as Sanjari's counsel would be totally dependent upon Amini's compliance with Indiana's rules for temporary admission. As of the date of trial, Amini had filed two defective requests for admission, and the trial proceeded as scheduled. Meanwhile, standby counsel was present at pretrial hearings as well as at trial and was informed on all matters pertaining to Sanjari's case.

 Sanjari asserts that the trial court's ruling on his October 29, 2009 motion for continuance was tantamount to a denial of his constitutional right to counsel. The Sixth Amendment guarantees a criminal defendant the right to have the assis-

tance of counsel for his defense. U.S. CONST., amend. VI. "A corollary of this right is the right to choose counsel when a defendant is financially able to do so, and a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Washington*, 902 N.E.2d at 286. "A conviction attained when a court unreasonably or arbitrarily interferes with an accused's right to retain counsel of his choice ... cannot stand, irrespective of whether the defendant has been prejudiced." *Id.* at 286–87 (citation and quotation marks omitted). "However, it is well-settled that the right to counsel of choice must be exercised at the appropriate stage of the proceedings." *Id.* (citation and quotation marks omitted).

Here, the trial court did not unreasonably or arbitrarily interfere with Sanjari's right to retain the counsel of his choice. Up until two weeks before trial, Sanjari was his own counsel of choice. He asserted in court that he "vehemently refused any kind of representation" because attorneys were "beholden to the Supreme Court" and therefore could not "provide a fair and honest to goodness service to their clients even if they wanted to because they would be afraid of repercussion by the Court." Tr. Aug. 27, 2009 Hrg. at 12. Throughout the proceedings, he repeatedly asserted his right to proceed pro se. Having received the required admonitions from the trial court about the dangers associated with self-representation, he proceeded to file numerous motions, objections to the State's motions, and requests for discovery. Before his dismissal, Sanjari's GAL testified that Sanjari is a man of "superior intellectual capabilities .... completely competent to represent himself and his own interests.... Never have I seen anybody who was more qualified to make decisions for himself than is Dr. Sanjari." *Id.* at 18.

Two weeks before trial, Sanjari changed his counsel of choice. When he asked that Amini be allowed to appear for him, the trial court granted a one-week continuance and provided Amini with the rules for temporary admission. One week later, when Amini had not accomplished the task, the trial court denied Sanjari's second motion for continuance, stating that if Amini did not enter an appearance for Sanjari, it would be because *Amini* did not comply with the Indiana rules. Thus, the trial court's refusal to allow Amini to appear was not unreasonable or arbitrary. Meanwhile, standby counsel remained present and available, and Sanjari's continued flurry of filing activity indicates that he would continue to act pro se unless and until Amini was admitted pro hac vice. In sum, the trial court acted within its discretion in denying Sanjari's motion for continuance for change of counsel.

Finally, to the extent Sanjari argues that he was statutorily entitled to a continuance based on illness, we note that his October 29, 2009 motion was not accompanied by oral testimony or a sworn written statement of a physician or medical official stating the nature and duration of his illness as required by statute. *See* Ind.Code § 35–36–7–1(e) (stating that motion for continuance based on defendant's illness must be accompanied by oral testimony given in open court or a sworn written statement of physician or hospital official having care or custody of defendant presenting nature and probable duration of defendant's incapacity to attend trial). The only explanation of illness that Sanjari offered in open court at the time of his motion was his *own* statement. As such, he was not statutorily entitled to an illness-based continuance.

### III. Double Jeopardy

Sanjari also asserts that his convictions for two counts of class C felony

nonsupport of a dependent child violate the constitutional prohibition against double jeopardy. The United States and Indiana Constitutions both prohibit placing a person in jeopardy twice for the same offense. U.S. Const. amend. V; Ind. Const. art. 1, § 14. One of the purposes of the double jeopardy prohibition is to protect citizens from multiple punishments for the same offense. *Jones v. State,* 812 N.E.2d 820, 822 (Ind.Ct.App.2004). Pursuant to the Indiana Constitution, two or more offenses are the "same offense ... if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Lee v. State,* 892 N.E.2d 1231, 1233 (Ind.2008) (citation and quotation marks omitted). Where each conviction requires proof of at least one unique evidentiary fact, double jeopardy is not violated. *Bald v. State,* 766 N.E.2d 1170, 1172 (Ind.2002).

Originally, the State charged Sanjari with two counts of class C felony nonsupport, one pertaining to A.S. and one pertaining to M.S., with each count listing an arrearage of $17,728 as of August 31, 2006. On September 2, 2009, the State amended the information to add two counts of class D felony nonsupport, one pertaining to each child, as of August 31, 2006. The charging period and arrearages were not amended for Counts I and II. The jury convicted Sanjari on all four counts. Nevertheless, at sentencing, the trial court entered judgment on the two class C felony convictions and vacated the two class D felony convictions, presumably because of double jeopardy concerns.

Sanjari now claims that, due to double jeopardy constraints, the trial court could enter judgment of conviction on only one of the two class C felony counts. He predicates his claim on the fact that only one child support order exists. That support order is an "in gross" order covering both of Sanjari's children. Appellant's App. at 1448. Indiana Code Section 35–46–1–5(a) states,

> A person who knowingly or intentionally fails to provide support to the person's dependent child commits nonsupport of a child, a Class D felony. However, the offense is a Class C felony if the total amount of unpaid support that is due and owing for one (1) *or more* children is at least fifteen thousand dollars ($15,000).

(Emphasis added.)

The record supports Sanjari's double jeopardy argument. The actual evidence used to convict Sanjari of *two* class C felony counts was *one* "in gross" support order. Although he has harmed more than one victim, he has committed only one crime: failure to pay at least $15,000 in support to one *or more* children. As such, conviction on both class C felony counts amounted to multiple punishments for the same offense in violation of his double jeopardy rights. Accordingly, we vacate his conviction on Count II class C felony nonsupport. We affirm his conviction and sentence on Count I, class C felony nonsupport.

### IV. Sentencing

Sanjari challenges his sentence on multiple grounds. At the outset, we note that our decision to vacate his conviction and sentence on Count II on double jeopardy grounds obviates the need to address his arguments regarding consecutive sentences on Counts I and II. As such, we now address the remainder of his sentencing claims.

### A. Abuse of Discretion

Sanjari received a five-year sentence on Count I, class C felony non-

support of a dependent child. Indiana Code Section 35–50–2–6(a) sets the sentencing range for a class C felony at two to eight years, with an advisory sentence of four years.[6] Sanjari first asserts that the trial court abused its discretion in its consideration of certain aggravating and mitigating factors. Sentencing decisions are left to the trial court's sound discretion and will be reversed only upon a showing of manifest abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Id.* at 493. Although a failure to find mitigating circumstances clearly supported by the record may imply that the trial court improperly overlooked them, the court is not obligated to explain why it has chosen not to find mitigating circumstances. *Roush v. State*, 875 N.E.2d 801, 811 (Ind.Ct.App.2007). Likewise, the court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor. *Hape v. State*, 903 N.E.2d 977, 1000 (Ind.Ct.App.2009), *trans. denied.*

Here, Sanjari cites his lack of criminal history as a mitigating factor allegedly overlooked by the trial court. However, in its sentencing order, the trial court specifically cited Sanjari's lack of criminal history as the only mitigator. To the extent San-

jari now complains that this mitigator should have been given greater weight, such a claim is no longer available for appellate review. *Anglemyer*, 868 N.E.2d at 493–94.

Sanjari also argues that the trial court improperly considered aggravating factors. The trial court identified the harm, injury, loss, or damage suffered by Sanjari's victims, stating that it was "significant and greater than the elements necessary to prove the commission of the crime." Appellant's App. at 1119 (citing Ind.Code § 35–38–1–7.1(a)(1)). Sanjari argues that the impact in this case does not exceed that which is normally associated with the crime of nonsupport of a dependent. Thus, he argues that it is not so distinct as to constitute an aggravating factor. We disagree. The trial court noted that, as of 2009, Sanjari's total arrearage of nearly $57,000 greatly exceeded the amount necessary to prove the commission of the offense and that Gratzol and her new spouse had been forced to work multiple jobs and to drain their retirement account to provide for the children's basic needs. The court also identified several non-statutory aggravators, including Sanjari's conduct in hiding from an arrest warrant and body attachment, his income potential as a nuclear physicist coupled with his refusal to seek employment and pay *any* support for over three years, and his lack of respect for the law and his "unwillingness to conform his behavior to socially-acceptable norms." *Id.* at 1121. In sum, we find no abuse of discretion in the trial court's consideration of aggravators and mitigators.

### B. Appropriateness

Sanjari also challenges the appropriateness of his sentence pursuant to

---

**6.** Indiana Code Section 35–50–2–6(b) provides the trial court with discretion to enter judgment and sentence as a *class D felony* in certain circumstances. However, Sanjari does not address subsection (b) in his brief. Thus, we limit our discussion to subsection (a).

Indiana Appellate Rule 7(B), which provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). We do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State,* 876 N.E.2d 340, 344 (Ind. Ct.App.2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Anglemyer,* 868 N.E.2d at 490; *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006).

In considering the nature of a defendant's offense, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Anglemyer,* 868 N.E.2d at 494. Here, we examine Sanjari's five-year sentence for one count of class C felony nonsupport of a dependent child. The advisory sentence for a class C felony is four years. Ind. Code § 35–50–2–6(a). Here, Sanjari was not merely late on a few child support payments. Instead, he failed to pay any support at all over a prolonged period spanning more than three years.

Moreover, Sanjari's conduct throughout the lengthy proceedings does not reflect well on his character. Notwithstanding the absence of a criminal history, he demonstrated a total disregard and disdain for the law. Not only did he fail to pay child support as ordered, but he also fled the jurisdiction and moved from state to state in avoidance of a body attachment and arrest warrant of which he was aware. He consistently accused the trial court of bias and prejudice, expressing his disdain for both the federal and Indiana judiciary as a whole. As such, his character does nothing to compel a lesser sentence. Thus, we conclude that he has failed to meet his burden of establishing that his sentence is inappropriate.

### C. Restitution, Fines, and Costs

As part of Sanjari's sentence, the trial court imposed a $10,000 suspended fine, $164 in non-suspendable court costs, $56,741 in restitution to Gratzol, and $3737.41 restitution to the sheriff's department for extradition costs. Sanjari contends that the trial court erred in imposing these sums without first holding an indigency hearing. As stated, sentencing decisions are left to the trial court's sound discretion and will be reversed only upon a showing of manifest abuse of discretion. *Anglemyer,* 868 N.E.2d at 490. This includes decisions to impose restitution, fines, costs, or fees. *Kimbrough v. State,* 911 N.E.2d 621, 636 (Ind.Ct.App.2009).

#### 1. Restitution

Sanjari claims that the trial court erred in ordering restitution without first conducting an indigency hearing. Criminal restitution orders imposed as part of sentencing are within the trial court's discretion. *McKenney v. State,* 848 N.E.2d 1127, 1128 (Ind.Ct.App.2006). The statute governing criminal restitution orders is silent regarding the issue of a defendant's indigency. Ind.Code § 35–50–5–3. Nevertheless, it is well settled that restitution imposed upon a defendant with an executed sentence does not require the trial court to conduct an inquiry into the defendant's ability to pay. *Collins v. State,* 676 N.E.2d 741, 744 (Ind.Ct.App. 1996). Restitution is a form of punishment, the purpose of which is "to impress upon a person convicted of a crime the magnitude of the loss he or she has caused and to defray the costs incurred by the victim as a result of the offense." *McKenney,* 848 N.E.2d at 1129. As such, it is an

"instrumental part of the offender's rehabilitation." *Id.* (citation and quotation marks omitted).

Here, the amount of restitution imposed is supported by the record and is not excessive. Accordingly, we conclude that the trial court acted within its discretion in ordering restitution as part of Sanjari's sentence without first conducting an indigency hearing.

### 2. Fines

■ With respect to fines, a person convicted of a class C felony may be fined not more than $10,000. Ind.Code § 35–50–2–6(a). "[W]henever the court imposes a fine, it shall conduct a hearing to determine whether the convicted person is indigent." Ind.Code § 35–38–1–18(a). "If the court suspends payment of the fine, the court shall conduct a hearing *at the time the fine is due* to determine whether the convicted person is indigent." Ind.Code § 35–38–1–18(b) (emphasis added). Because Sanjari's fine was suspended and not due at sentencing, the trial court acted within its discretion in not holding an indigency hearing at that time.[7] *See Kimbrough,* 911 N.E.2d at 638 (stating that defendant's assertion of error based on failure to hold indigency hearing would be ripe only when court rescinds suspension at later date and defendant is imprisoned for failing to pay fine).

### 3. Costs

■ With respect to costs, a defendant's indigency does not shield him from all costs or fees related to his conviction. *Banks v. State,* 847 N.E.2d 1050, 1051 (Ind.Ct.App.2006), *trans. denied.* If the trial court imposes fees within the statutory limits, there is no abuse of discretion. *Id.* Indiana Code Section 33–37–2–3(a) states that when the court imposes costs, it "shall conduct a hearing to determine whether the convicted person is indigent." Indiana Code Section 33–37–4–1 does not explicitly require a determination of indigency and requires the clerk to collect from the defendant convicted of a felony a criminal costs fee of $120. The statute goes on to list a variety of additional fees that must be collected from the defendant. We find no abuse of discretion in the trial court's decision to impose $164 in costs.

Finally, with respect to the foregoing arguments, we note that the trial court did conduct a post-sentencing indigency hearing on May 12, 2010. In its order denying Sanjari's request to be found indigent, the trial court addressed his financial situation, citing both his actual current expenditures, i.e., for the "two non-public defender attorney's [sic] representing him," and his other available financial resources, i.e., relatives who had offered to make partial payments for him. Appellant's App. at 1148. The court characterized Sanjari's pattern throughout the proceedings as a steadfast *refusal* to pay, not an *inability* to pay. *Id.* Again, we note that although they were technically imposed at sentencing, none of the fines or costs had been declared due on that date. Nevertheless, by conducting the post-sentencing indigency hearing, the trial court cured any error it is alleged to have committed in not having made the indigency determination at sentencing.

---

7. Sanjari also asserts that the trial court erred in failing to specifically state that he could not be imprisoned for failing to pay the imposed fine. *See Wooden v. State,* 757 N.E.2d 212, 217 (Ind.Ct.App.2001) (stating that when a fine is imposed upon a defendant *it has determined to be indigent,* the trial court must expressly state that the defendant shall not be imprisoned for failing to pay the fine), *trans. denied* (2002). Here, an indigency determination has not been made because the fine has not yet become due. Thus, at sentencing, such a statement would have been premature.

In sum, we conclude that the trial court acted within its discretion in determining that Sanjari had waived his right to be present at trial and in denying his October 29, 2009 motion for continuance. We vacate his conviction and sentence on Count II due to double jeopardy constraints and affirm his conviction and five-year sentence on Count I, with fines, costs, and restitution.

Affirmed in part and vacated in part.

KIRSCH, J., and BRADFORD, J., concur.