**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 17 2014, 7:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JANE H. CONLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1306-CR-301 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy J. Barbar, Judge
Cause No. 49G02-1108-FB-60414

**February 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Christopher Smith ("Smith") was convicted, after a bench trial, of burglary[1] as a Class B felony, criminal mischief[2] as a Class B misdemeanor and was determined to be an habitual offender.[3] He appeals, raising the following restated issues for our review:

I. Whether sufficient evidence was presented to support his conviction for burglary; and

II. Whether the trial court erred in conducting Smith's trial *in absentia*.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 28, 2011, Travis Shoemake ("Shoemake") was living with his mother in her home and had fallen asleep on the sofa in the den at approximately 11:00 p.m. His mother was not home at the time. About forty minutes after he had fallen asleep, Shoemake woke up and heard something that sounded like breaking glass. He walked into different rooms to try to determine where the sound "was coming from" and then "heard [a] light switch go off." *Tr.* at 14. Shoemake then went back to the sofa and retrieved his gun. He saw that the light was on in his mother's bedroom, and when he peeked into her room, he observed a man, later identified as Smith, inside the room wearing a white t-shirt. Shoemake went back to the den and called 911. Shoemake then heard doors being opened and sensed that Smith was moving down the hallway. Shoemake moved to a spare bedroom and got behind the door. The light turned on inside the spare bedroom, and when

---

[1] *See* Ind. Code § 35-43-2-1.

[2] *See* Ind. Code § 35-43-1-2.

[3] *See* Ind. Code § 35-50-2-8.

he looked around the door, he recognized Smith as someone he knew from the neighborhood. Shoemake jumped out and pointed his gun at Smith. Smith, who was surprised, started yelling apologies when he realized he knew Shoemake. Smith stated he did not know that Shoemake "stayed there" and was "sorry [he was] doing bad." *Id*. at 17. Shoemake knew the police were on their way, so he moved Smith to the garage.

Indianapolis Metropolitan Police Department Officer Jerry Torres ("Officer Torres") was dispatched to Shoemake's residence on the report of a burglary in progress with the suspect being a black male wearing a white t-shirt. He arrived and walked around the house, eventually finding a broken window that appeared to lead to a bedroom. Officer Torres went back to the front of the house and observed the garage door opening. He saw Smith, who was wearing a white t-shirt, come out of the garage and ordered him to get down on the ground. During a search of Smith, Officer Torres discovered jewelry and change that belonged to Shoemake's mother and had been located on the dresser in her bedroom.

The State charged Smith with Class B felony burglary, Class D felony theft, and Class B misdemeanor criminal mischief and with being an habitual offender. The trial court first scheduled a jury trial for October 17, 2011. The parties, including Smith, who was incarcerated at the time, appeared in court on October 14, 2011 for a hearing at which Smith waived his right to a jury trial. The trial court granted the State's motion for a continuance of the trial and scheduled a bench trial for November 4, 2011. On November 4, the parties, including the still-incarcerated Smith, appeared for the trial. The State requested a body attachment order for Shoemake, who had been subpoenaed but had not

appeared for the trial. The trial court granted the State's motion and issued a body attachment order for Shoemake. The trial court rescheduled the trial for December 9, 2011 and released Smith on his own recognizance.

On December 9, 2011, the State and Smith's defense counsel appeared for the trial. Smith failed to appear. Defense counsel stated that she had not been able to contact Smith since his release on his own recognizance. *Id*. at 11. She had attempted contact "a couple" of times, but could not locate him. *Id*. She told the trial court that she had spoken to a male at a telephone number given as belonging to a family member, and the male told her he did not know where Smith was, but that "[Smith] knew he had court today." *Id*.

The trial court proceeded with the trial *in absentia* and found Smith guilty of Class B felony burglary, Class D felony theft, and Class B misdemeanor criminal mischief; the theft conviction was merged into the burglary conviction. The trial court issued a warrant for Smith's arrest, and he was re-arrested on January 4, 2012. He signed a plea agreement, in which he admitted he was an habitual offender. On May 29, 2013, after several continuances, sentencing was held, and the trial court ordered Smith to serve sixteen years for his burglary conviction, enhanced by ten years due to his habitual offender determination, and 365 days for his criminal mischief conviction to be served concurrently with each other for a total of twenty-six years executed. Smith now appeals.

## DISCUSSION AND DECISION

### I. Sufficient Evidence

Our standard of reviewing claims of sufficiency of the evidence is well settled. When reviewing the sufficiency of the evidence, we consider only the probative evidence

and reasonable inferences supporting the verdict. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We do not reweigh the evidence or assess witness credibility. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* A conviction may be based upon circumstantial evidence alone. *Bockler v. State,* 908 N.E.2d 342, 346 (Ind. Ct. App. 2009).

Smith argues that State failed to present sufficient evidence to support his conviction for burglary. He contends that there was not sufficient evidence to prove he had the intent to commit a felony when he entered the dwelling of Shoemake and his mother. Specifically, he asserts the evidence did not prove that he intended to deprive Shoemake or his mother of any part of the value or use of their property.

In order to convict Smith of burglary, the State was required to prove that Smith broke into and entered the dwelling of Shoemake and his mother, with the intent to commit the felony of theft therein. *See* Ind. Code § 35-43-2-1; *Appellant's App*. at 31. Theft is the knowing or intentional exertion of unauthorized control over property of another person with intent to deprive that person of any part of its value or use. I.C. § 35-43-1-2(a). Intent is a mental state and, absent an admission by the defendant, the trier of fact must resort to the reasonable inferences from both the direct and circumstantial evidence to determine whether the defendant has the requisite intent to commit the offense in question. *Stokes v.*

5

*State*, 922 N.E.2d 758, 764 (Ind. Ct. App. 2010), *trans. denied*.

Here, the evidence presented showed that, after Shoemake heard the sound of breaking glass, he observed Smith inside his mother's bedroom. Shoemake testified that the bedroom was in disarray, but had not been before Smith had broken into the house. *Tr.* at 21. This evidence supports the reasonable inference that it was Smith who rummaged through the items in the bedroom looking for items to steal, which in turn, supports the inference that he broke into the residence with the intent to commit theft. *See May v. State*, 810 N.E.2d 741, 745 (Ind. Ct. App. 2004) (finding inference of intent to commit theft where house was in disarray, closets had been rummaged through, and clothes were lying on the floor). Additionally, Smith was found to be in possession of jewelry belonging to Shoemake's mother when he was confronted by Shoemake and when the police took him into custody. The jewelry was usually located on the dresser in the bedroom where Smith had entered after breaking the window. *Tr.* at 19. This also supports a reasonable inference that Smith broke into the house with the intent to commit theft. *See Keller v. State*, 987 N.E.2d 1099, 1118 (Ind. Ct. App. 2013) (finding inference of intent to commit theft where items identified as victim's were recovered from defendant's garage and home), *trans. denied*. We, therefore, conclude that sufficient evidence was presented to support the reasonable inference that Smith entered Shoemake's residence with the intent to commit theft and to support his conviction for burglary.[4]

---

[4] Smith also argues that his conviction for criminal mischief was not supported by sufficient evidence because the State did not prove that he was the one who broke the window in the bedroom. Smith fails to make a cogent argument in support of this assertion. Failure to put forth a cogent argument acts as a waiver of the issue on appeal. *Whaley v. State*, 843 N.E.2d 1, 18 n.15 (Ind. Ct. App. 2006), *trans. denied.* Thus, Smith has waived the issue on appeal.

6

## II. Trial *In Absentia*

Smith argues that the trial court erred in conducting his trial *in absentia* because he did not knowingly and voluntarily waive his right to be present at the trial. Both the Federal and Indiana Constitutions afford defendants in a criminal proceeding the right to be present at all stages of their trial. U.S. Const. amend. VI; Ind. Const. art. I, § 13. However, a defendant may be tried *in absentia* if the trial court determines that the defendant knowingly and voluntarily waived that right. *Jackson v. State*, 868 N.E.2d 494, 498 (Ind. 2007). When a defendant fails to appear for trial and fails to notify the trial court or provide it with an explanation of his absence, the trial court may conclude the defendant's absence is knowing and voluntary and proceed with trial when there is evidence that the defendant knew of his scheduled trial date. *Id.*; *see also Soliz v. State*, 832 N.E.2d 1022, 1029 (Ind. Ct. App. 2005) (stating that best evidence that defendant knew trial date is defendant's presence in court on date matter is set for trial), *trans. denied*. On appeal, we consider the entire record to determine whether the defendant voluntarily, knowingly, and intelligently waived his right to be present at trial. *Brown v. State*, 839 N.E.2d 225, 228 (Ind. Ct. App. 2005), *trans. denied*. A defendant's explanation of his absence is a part of the evidence available to a reviewing court in determining whether it was error to try him *in absentia. Id*.

Here, the record shows that Smith was informed at the hearing held on November 4, 2011 that his trial was scheduled for December 9, 2011. He was present in person and with counsel at that hearing. "The 'best evidence' of a defendant's knowledge of the trial date is the defendant's presence in court on the day the matter is set for trial." *Id*. at 227

7

(citing *Fennell v. State,* 492 N.E.2d 297, 299 (Ind.1986)).  Additionally, on the date of the trial, Smith's counsel told the trial court that she had not had any contact with Smith since he was released on his own recognizance several weeks prior.  *Tr.* at 11.  She stated she had tried to contact him a few times, but was not able to locate him.  *Id*.  She told the trial court she had spoken to a man at a telephone number she believed belonged to a family member, and the male told her he did not know where Smith was, but that "[Smith] knew he had court today."  *Id*.  Accordingly, when Smith failed to show up for his scheduled trial, the court was permitted to presume that Smith voluntarily waived his right to be present and could therefore try him *in absentia.  Brown*, 839 N.E.2d at 228.  While the trial court was not required to make further inquiry sua sponte as to the presumption, Smith could not be prevented from offering an explanation in an attempt to rebut the presumption of voluntary waiver.  *Id*.  However, when Smith did later appear after being re-arrested, he did not offer any reason why he had failed to appear for his trial date.  We cannot say the trial court erred in determining that Smith voluntarily waived his right to be present at trial and in conducting his trial *in absentia*.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.