**FOR PUBLICATION**



**FILED**

Jan 06 2012, 8:24 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NANCY A. MCCASLIN**
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FELIX C. SICKELS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1102-CR-66 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable David C. Bonfiglio, Judge
Cause No. 20D06-0109-CF-845

**January 6, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Felix C. Sickels appeals his three convictions for nonsupport of a dependent child, two as Class C felonies and one as a Class D felony, and his resulting ten-year aggregate sentence, following a bench trial. Sickels raises four issues for our review, which we reorganize and restate as the following five issues:

1. Whether Sickels' three convictions are contrary to federal or state principles against double jeopardy because he violated only a single order for child support.

2. Whether the trial court erred when it denied his motion for discharge pursuant to Indiana Criminal Rule 4(C).

3. Whether the State denied Sickels' right to a speedy trial under the Sixth Amendment to the United States Constitution.

4. Whether the trial court lacked personal jurisdiction over Sickels.

5. Whether the trial court abused its discretion when it sentenced him.

We affirm in part and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

On August 17, 1992, the Elkhart Superior Court dissolved the marriage of Sickels and Kathy Sickels. The court awarded custody of their three minor children, G.S., M.S., and B.S., to Kathy. The court ordered Sickels to pay $118 in child support per week ("the civil support order"), and concluded that he had a then-existing arrearage of $3,905. At the time of the court's order, Sickels lived in Three Rivers, Michigan, and Kathy and the three children lived in Goshen, Indiana.

2

Between June 1, 1997, and August 31, 1999, Sickels did not pay any of his court-ordered child support payments. Sometime later in 1999, Kathy moved to New York with M.S. and B.S. G.S. had reached the age of majority and chose to remain in Indiana.

On September 26, 2001, the State charged Sickels with three counts of nonsupport of a dependent, each as a Class C felony. Count I of the State's information (as later amended) alleged that, between June 1, 1997, and August 31, 1999, Sickels had failed to pay support for G.S. Count II alleged that, between the same dates, Sickels had failed to pay support for M.S. And Count III alleged that Sickels had failed to pay support for B.S. over the same timeframe. Each count alleged that Sickels had accumulated an arrearage in excess of $15,000 per child.[1] See Appellant's App. at 10. That same day, the trial court issued a bench warrant for Sickels' arrest.

Nearly a decade later, on July 30, 2010, the State of Michigan extradited Sickels to Indiana. On October 5, 2010, Sickels filed a motion to discharge the State's charges against him for failure to prosecute a speedy trial, pursuant to Indiana Rule of Criminal Procedure 4(C) and the Sixth Amendment to the United States Constitution. The State filed an objection to Sickels' motion and, after an evidentiary hearing, the court denied the motion in a written order. Specifically, the trial court found:

> 1.     That the Defendant was charged with Non[-]Support of a Dependent Child, Class C Felony, three counts, by filing of an Information and Affidavit of Probable Cause with the Court on September 26, 2001. The Court found probable cause and issued a warrant for the Defendant's arrest.

---

[1] As discussed below, under the statute in effect during the timeframe of the alleged crimes the State needed to show only $10,000 in arrearage to elevate Sickels' crimes from Class D felonies to Class C felonies. See Ind. Code § 35-46-1-5(a) (West 1998). But the difference between those two amounts was immaterial to Sickels' trial and convictions, and we, therefore, do not consider it.

2.	That the Defendant was arrested in the State of Michigan on a Fugitive charge on March 20, 2002[,] and bonded out the next day.

3.	That he attended hearings set in Michigan by the Michigan Court on April 19, 2002, May 20, 2002[,] and June 16, 2002[.]  Those charges were dismissed on June 17, 2002.  The Defendant was never extradited to Indiana.

4.	That in 2002, the Elkhart County Prosecuting Attorney was not notified of his arrest.

5.	That the Defendant was arrested in Michigan on July 20, 2005[,] on a Fugitive charge and bonded out the next day.

6.	That he attended hearings set in Michigan set by the Michigan Court on August 19, 2005, September 20, 2005[,] and October 20, 2005.  The Elkhart County Prosecuting Attorney was never contacted concerning this arrest.  The Defendant was never extradited and the Fugitive charges were dismissed on October 20, 2005.

7.	That the Elkhart County Prosecuting Attorney was first advised of the Defendant's arrest in a letter dated February 27, 2006.  This was the first word the Elkhart County Prosecutor had that the Defendant had been located.  In that letter the [Michigan] Court advised the Prosecutor that the Defendant had come in contact with St. Joseph County, Michigan[,] Sheriff's Department.  The Michigan Court advised that it had directed the Sheriff to not arrest the Defendant.  The Court requested that the Prosecutor advise the Court of the Prosecutor's intentions in regard to the Defendant in that the computer systems LEIN [Law Enforcement Information Network, maintained by Michigan] and NCIC [National Crime Information Center, maintained by the FBI] still showed an outstanding warrant . . . .  The Elkhart County Prosecutor responded on March 8, 2006[,] that the Court's letter was its first indication the Defendant had been arrested.  The Deputy Elkhart County Prosecutor that responded indicated that[, under] the usual process[,] when a defendant refuses to waive the formal process of jurisdiction when arrested in another state, the Elkhart Sheriff's Department contacts the Elkhart Prosecutor and the Elkhart Prosecutor prepares the application for the Governor's Warrant, which is then submitted to the Indiana Attorney General's Office.  He further indicated when Defendant is next arrested that the Elkhart Prosecutor would prepare the application of the Governor's Warrant.

8.	That the Elkhart County Prosecutor's Office was contacted by Michigan authorities on October 2, 2006[,] indicating that Defendant was

4

charged with a Fugitive charge. The Defendant was arrested [on] September 26, 2006[,] and bonded [on] October 2, 2006. That Elkhart County Prosecutor's Office obtained an Indiana Governor's Warrant on November 15, 2006[,] directed to the State of Michigan. The Governor's Warrant was never served. The Defendant was not extradited to Indiana. The Fugitive charges were dismissed on December 28, 2006[,] in Michigan.

9. An additional Governor's Warrant was obtained by the Elkhart County Prosecutor on October 27, 2008. Again the Governor's Warrant was not served and the Defendant was not extradited to Indiana. A third Governor's Warrant was issued on May 17, 2010. The Defendant was arrested on July 27, 2010[,] and that Governor's Warrant was served on him and he was extradited to Indiana. An Initial Hearing was held on August 4, 2010[,] in this Court by this Court's Magistrate.

10. [Sickels] lived in Elkhart, Indiana[,] from 1958 until 1991, . . . he has one sister that lives in Elkhart and . . . another sister lives in Bristol, Indiana[,] which is located in Elkhart County. He reported "regular contact" with his siblings. He also has a daughter, 35 years of age, from a prior relationship [who] resides in Elkhart, Indiana[,] and he reports "regular contact" with this adult child. He attended Elkhart Memorial High School in Elkhart, Indiana[,] and . . . he has been employed in Michigan the past thirteen years at Mr. B's Dairy Bar. The Court notes that the distance between Three Rivers and Elkhart County is less than thirty miles.

11. That the Defendant represented to the Michigan Court in 2002 that he was working on turning himself in and making payments with Elkhart. That Defendant represented to the Michigan Court in 2005: Attorney expects to have handled by next week. Payments have been made. The Michigan Court's next notation to that entry is "CLOSE—NO GOVS WARR[.]" The Defendant did not have an attorney in the Indiana case and he did not make the reported payments. The Michigan Court records attached to Defendant's pleadings reveal in May 2010: That Dave Gizzi [an investigative agent] from Indiana met with the Court, Defendant still wanted, that Gizzi showed the Court and the Court copied the 2008 Governor's [W]arrant that the Michigan Court had never received. Further notation was that a new Governor's Warrant was in process and then the final entry, the Defendant in custody July 27, 2010[,] and that the Court had the Indiana Governor's Warrant.

12. That at no time did the Defendant make the 20 mile trip to the Elkhart Courthouse to appear on this matter, although he had regular contact with two siblings and one child who live in Elkhart County. Nor did he appear

in the underlying civil cause of action; 20D03-9107-DR-00205, . . . or make any child support payments with an arrearage of over $80,000 of which he admitted at hearing on this Motion.

13.    That prior to his arrest on July 27, 2010, he spent a total of nine days in [a] Michigan jail on the various fugitive warrants as hereinabove stated.

Id. at 66-69 (citations to the record omitted).  The trial court then concluded that the "triggering mechanism" for Indiana Criminal Rule 4(C) and the Sixth Amendment was the "execution of the Indiana Governor's Warrant on July 27, 2010" and, therefore, there had been no delay under our speedy trial rules.  Id. at 69, 73.

On January 7, 2011, the court held a bench trial on the State's allegations, after which the court found Sickels guilty of three counts of nonsupport, two as Class C felonies and one as a Class D felony.  Thereafter, the court entered the following sentencing statement:

[My earlier] finding that there was $86,420 in unpaid support . . . is now reduced to restitution order [sic] to Ms. Sickels in this case and [I] also assess you the maximum fine of $10,000 and suspend that on the condition you do make your very best efforts over the period of your supervision to pay off that $86,420 to Ms. Sickels . . . .  As far as . . . your actual sentence, what we did when I entered the convictions because of recent Appellate Court decisions, it was the view that we would enter the convictions on Counts I and II as C Felonies and we entered a conviction on Count III as a D Felony.[2]  I'm going to order you to serve four years on Count I, four years on Count II, and two years on Count III[,] which accumulates to a ten[-]year sentence and the reasons for the maximum sentence [are] you do have a prior criminal history, that you just pretty blatantly failed to pay your child support, you lived in a neighboring county over the state line. The evidence before the Court certainly is that you returned to Elkhart County on a number of occasions having family here, that you had employment, you just simply blew it off.  You had at least two, maybe three, I can't remember exactly the number of contacts with law enforcement in Michigan and the Courts in Michigan, and clearly misinformed the Courts there about your situations and your intentions.  So

---

[2]  It is not clear which recent decisions the trial court relied on to reduce one of Sickels' three convictions to a Class D felony.

6

I believe that if I don't put you in a . . . supervised community corrections program that you're not going to make your best efforts to pay this $86,400. As I said, I'm giving you the maximum sentence. I am doing a direct commitment to Elkhart County Community Corrections for that rather than putting you in jail in a jail cell. That certainly does not seem like a good use of resources or—the purpose here . . . is to make full restitution . . . and, therefore, I will make a commitment—direct commitment to community corrections.

Transcript at 87-88. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Double Jeopardy

Sickels appeals his convictions on multiple grounds, but we first discuss his allegation that, under the federal and state constitutions, he should have been charged and convicted of one count of nonsupport rather than three. As our supreme court has explained:

> two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis original). The "statutory elements" test under the Indiana Constitution is "substantially equivalent to the 'same elements' test used in [the] federal double jeopardy analysis under Blockburger v. United States, 284 U.S. 299 (1932)." Lee v. State, 892 N.E.2d 1231, 1233 (Ind. 2008).

As an initial matter, we note that Sickels' convictions are based on allegations of nonsupport of his dependents between 1997 and 1999. "The general rule . . . is that the law in effect at the time that the crime was committed is controlling." Holsclaw v. State,

270 Ind. 256, 261, 384 N.E.2d 1026, 1030 (1979).  According to the statute in effect at

the time of Sickels' crimes:

> A person who knowingly or intentionally fails to provide support to the
> person's dependent child commits nonsupport of a child, a Class D felony.
> However, the offense is a Class C felony if the amount of unpaid support
> that is due and owing is at least ten thousand dollars ($10,000).

Ind. Code § 35-46-1-5(a) (West 1998).  The statute was amended in 2001.[3]  See P.L. 123-

2001 § 4.  Before the statutory amendment, this court had interpreted the law to require

the State to show a per-dependent arrearage of at least $10,000 to support each alleged

Class C felony.  See State v. Moore, 688 N.E.2d 917, 918 (Ind. Ct. App. 1997); see also

Geans v. State, 623 N.E.2d 435, 436-38 (Ind. Ct. App. 1993) (Rucker, J.) (holding that

the State could pursue a Class D felony conviction for each unsupported dependent).[4]

---

[3]  The current version of the statute is based on the 2001 amendment and reads:

> A person who knowingly or intentionally fails to provide support to the person's
> dependent child commits nonsupport of a child, a Class D felony.  However, the offense
> is a Class C felony if the total amount of unpaid support that is due and owing for one (1)
> or more children is at least fifteen thousand dollars ($15,000).

I.C. § 35-46-1-5(a) (West 2011).

[4]  In State v. Moore, the State argued to this court that it could support three Class C felony
convictions when the defendant had three dependents and the total arrearage was in excess of $10,000,
even though the per-dependent arrearage did not exceed that amount.  688 N.E.2d at 918.  We disagreed,
holding that "the language of the statute does not support this construction" and that, to prove one Class C
felony, the State had to show that the defendant "owed more than $10,000 in child support with respect to
any individual child."  Id.
    The General Assembly's 2001 amendment to the statute appears to have been an attempt to adopt
the State's argument in Moore, since the amended statute allows the State to prosecute a Class C felony if
it can show that the "total amount of unpaid support that is due and owing for one (1) or more children" is
at least $15,000.  See I.C. § 35-46-1-5(a) (West 2011).  However, it is now unclear whether the current
version of the statute permits the prosecution of multiple Class C felonies for multiple, unsupported
dependents, even if the per-dependent arrearage is at least $15,000.  Compare Sanjari v. State, 942 N.E.2d
134 (Ind. Ct. App. 2011) (holding that multiple Class C felony convictions are contrary to the "one (1) or
more children" language of the statute, regardless of the number of dependents affected), vacated by grant
of transfer (Ind. May 6, 2011) (docket), and Porter v. State, 935 N.E.2d 1228 (Ind. Ct. App. 2010)
(holding that the State could seek only one Class C felony but multiple Class D felony convictions for
multiple, unsupported dependents), with Gilliam v. State, 901 N.E.2d 72 (Ind. Ct. App. 2009) (affirming

Here, Sickels contends that his multiple convictions for nonsupport violate double jeopardy principles because his nonsupport violates only one civil order, which is an "in gross" support order. That is, the civil support order requires Sickels to pay a sum certain per week rather than per child. It is apparently irrelevant to Sickels' double jeopardy argument that he was convicted of two Class C felonies and one Class D felony. The difference between the two levels of conviction is that a Class C felony requires an arrearage of at least $10,000. See I.C. § 35-46-1-5(a) (West 1998).

Sickels' double jeopardy arguments recently found support from this court in Sanjari v. State, 942 N.E.2d 134 (Ind. Ct. App. 2011), vacated by grant of transfer (Ind. May 6, 2011) (docket). In that case, another panel of this court concluded that, under the language of the current version of the statute, multiple convictions for nonsupport of a dependent violated the Double Jeopardy Clause of Indiana's Constitution. Specifically, that panel stated as follows:

> [Defendant] Sanjari also asserts that his convictions for two counts of class C felony nonsupport of a dependent child violate the constitutional prohibition against double jeopardy. . . .
>
> Originally, the State charged Sanjari with two counts of class C felony nonsupport, one pertaining to A.S. and one pertaining to M.S., with each count listing an arrearage of $17,728 as of August 31, 2006. . . .

three Class C felony convictions based on three civil support orders without addressing the restriction that the "total amount of unpaid support . . . is due and owing for one (1) or more children"). We also note that the State has on occasion, but not consistently, based the number of Class C felony allegations on the number of civil support orders violated rather than the number of dependents unsupported. See, e.g., Culbertson v. State, 929 N.E.2d 900 (Ind. Ct. App. 2010), trans. denied; Flickner v. State, 908 N.E.2d 270 (Ind. Ct. App. 2009); Gilliam, 901 N.E.2d 72; but see Sanjari, 942 N.E.2d 134, vacated; Porter, 935 N.E.2d 1228.

In this appeal, Sickels contends that his multiple Class C felony convictions violate double jeopardy because he violated only a single civil order. We address that argument accordingly. But Sickels does not suggest, and we therefore do not consider, that the State was prohibited from seeking multiple Class C felony convictions based on the plain language of the prior version of the statute, under which he was convicted. See Ind. Appellate Rule 46(A)(8)(a); Moore, 688 N.E.2d at 918.

9

Sanjari now claims that, due to double jeopardy constraints, the trial court could enter judgment of conviction on only one of the two class C felony counts. He predicates his claim on the fact that only one child support order exists. That support order is an "in gross" order covering both of Sanjari's children. Indiana Code Section 35-46-1-5(a) states,

> A person who knowingly or intentionally fails to provide support to the person's dependent child commits nonsupport of a child, a Class D felony. However, the offense is a Class C felony if the total amount of unpaid support that is due and owing for one (1) or more children is at least fifteen thousand dollars ($15,000).

(Emphasis added.)

The record supports Sanjari's double jeopardy argument. The actual evidence used to convict Sanjari of two class C felony counts was one "in gross" support order. Although he has harmed more than one victim, he has committed only one crime: failure to pay at least $15,000 in support to one or more children. As such, conviction on both class C felony counts amounted to multiple punishments for the same offense in violation of his double jeopardy rights. Accordingly, we vacate his conviction on Count II class C felony nonsupport. We affirm his conviction and sentence on Count I, class C felony nonsupport.

Id. at 143-44 (citation to the record omitted). The State sought, and our supreme court granted, transfer of jurisdiction in Sanjari.[5] Accordingly, that decision has been vacated.[6]

See Ind. Appellate Rule 58(A).

---

[5] The defendant also sought transfer, but our supreme court denied his petition on the same date it granted the State's.

[6] Although our supreme court has granted transfer in Sanjari, it has not yet issued an opinion in that case. We emphasize that a vacated case is not precedent and we do not regard it as such. See McGowan v. State, 674 N.E.2d 174, 175 (Ind. 1996) ("Upon granting the petition to transfer, the decision of the Court of Appeals is deemed vacated and held for naught."). Rather, we mention Sanjari merely to give context to the legal framework of the issues raised by the facts in the instant case. See, e.g., Bd. of Sch. Trs. v. Barnell by Duncan, 678 N.E.2d 799, 804 n.2 (Ind. Ct. App. 1997); see also Senn v. State, 766 N.E.2d 1190, 1198-99 (Ind. Ct. App. 2002) (discussing Martin v. State, 748 N.E.2d 428 (Ind. Ct. App. 2001), trans. granted, while noting, "[a]lthough transfer has been granted and the opinion has been vacated in Martin, we note Judge Robb's dissent . . . .").

10

Insofar as the panel in <u>Sanjari</u> reached its conclusion based on the current version of the statute, that decision is inapposite here because the current statutory language is materially different from the language in effect at the time Sickels committed his crimes. Under the prior version of the statute, it was well established that the State could prosecute multiple felonies for multiple dependents, even if there was only one support order. See <u>Moore</u>, 688 N.E.2d at 918; <u>Geans</u>, 623 N.E.2d at 437. <u>Sanjari</u>'s reliance on the language of the current version of the statute simply does not apply to Sickels' prosecution.

However, the <u>Sanjari</u> panel's conclusion that the use of one civil order to support multiple convictions violates the <u>Richardson</u> actual evidence test would, if accurate, apply with equal force on these facts as it did in that case. But we are not persuaded that <u>Sanjari</u> is accurate in that respect. The statute proscribes the nonsupport of dependents, not the violation of civil support orders. See <u>Porter v. State</u>, 935 N.E.2d 1228 (Ind. Ct. App. 2010) (holding, under the current version of the statute, that the State could seek multiple Class D felonies convictions for multiple, unsupported dependents); <u>Geans</u>, 623 N.E.2d at 437 (holding the same under the prior version of the statute). In the language of double jeopardy, we conclude that Sickels' three convictions do not violate the same elements test of the United States Constitution or the statutory elements test or the actual evidence test of the Indiana Constitution.

We first consider the same elements test and the statutory elements test. As our supreme court has stated:

> This inquiry is quite simple when a facial comparison of the charged crimes clearly shows that separate offenses are involved. For example, if a

11

defendant is charged with murdering A and murdering B, further inquiry into whether the offenses are the "same offense" for double jeopardy purposes is not warranted because the charged crimes are different on their face. They involve different victims. Similarly, if a defendant is charged with robbing a particular store on Monday and then again on Friday, the offenses are, facially, not the same.

Richardson, 717 N.E.2d 32, 50 n.40.

Here, the State charged Sickels with having committed three counts of nonsupport of a dependent. Each of the State's allegations was based on a different victim, namely, one of Sickels' dependent children. As Sickels himself acknowledges, on the face of the charging information the State alleged three different crimes. See Appellant's Br. at 45. Stated another way, each alleged offense "require[d] proof of a fact that the other d[id] not," namely, the nonsupport of a particular dependent child. Id. at 50 n.41 (discussing the Blockburger standard). Thus, the State's allegations did not violate the same elements test or the statutory elements test.

Similarly, neither do Sickels' three convictions violate the actual evidence test. According to our supreme court:

To show that two challenged offenses constitute the same offense under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." [Richardson, 717 N.E.2d at 53.]

Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination. Richardson, 717 N.E.2d at 54 n.48; see, e.g., Burnett v. State, 736 N.E.2d 259, 262-63 (Ind. 2000). The Richardson actual evidence test was carefully and deliberately crafted to provide a general formulation for the resolution of all actual evidence test claims. The language expressing the actual evidence test explicitly requires

12

evaluation of whether the evidentiary facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. The test is not merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second challenged offense. In other words, under the Richardson actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. Application of this principle has been articulated in different ways. Compare Richardson, 717 N.E.2d at 54 ("the defendant has demonstrated a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery were also used to establish the essential elements of the class A misdemeanor battery"), with Chapman v. State, 719 N.E.2d 1232, 1234 (Ind. 1999) ("the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of robbery as a Class A felony").

Spivey v. State, 761 N.E.2d 831, 832-33 (Ind. 2002) (emphasis added, footnote omitted).

That is, to avoid a double jeopardy violation, "each conviction require[s] proof of at least one unique evidentiary fact." Bald v. State, 766 N.E.2d 1170, 1172 (Ind. 2002).

An essential element of the crime of nonsupport of a dependent is the existence of a dependent child. See I.C. § 35-46-1-5(a). Thus, an essential element of the State's first charge against Sickels was the existence of G.S. An essential element of the State's second charge was the existence of M.S. And an essential element of the third charge was the existence of B.S. As such, each of the State's three allegations "required proof of at least one unique evidentiary fact." Bald, 766 N.E.2d at 1172. And the proof of one child's existence is a discrete and unique fact that does not prove the existence of another child. Thus, Sickels' three convictions did not violate to the actual evidence test.[7] Id.

---

[7] We also note that the State's evidence consisted of more than just the civil support order. The State called two witnesses, Kathy and a deputy prosecutor from the Elkhart County prosecutor's office, child support division. During the deputy prosecutor's testimony, the State had six exhibits admitted into

**Issue Two:  Criminal Rule 4(C)**

Sickels next argues that the trial court failed to grant him a speedy trial under Indiana Criminal Rule of Procedure 4(C).  The right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 12 of the Indiana Constitution.  Clark v. State, 659 N.E.2d 548, 551 (Ind. 1995).  This "fundamental principle of constitutional law" has long been zealously guarded by our courts.  Id. (quoting Castle v. State, 237 Ind. 83, 143 N.E.2d 570, 572 (1957)).  To this end, the provisions of Indiana Criminal Rule 4 implement the defendant's speedy trial right.  Id.

Rule 4(C) provides:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule.  Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance.  Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.  Any defendant so held shall, on motion, be discharged.

Ind. Criminal Rule 4(C).  We review a trial court's ruling on a Rule 4(C) motion for abuse of discretion.  Curtis v. State, 948 N.E.2d 1143, 1149 (Ind. 2011).

Our supreme court recently reiterated several important points about Rule 4(C):

---

the record, including the chronological case summary, the dissolution decree, the support docket showing the amount of support received from Sickels, two payment histories showing period-by-period arrearage, and a court extension sheet.

14

We recognize that the State contends it should not be "faulted" . . . . But the focus of Criminal Rule 4 is not fault; it is to ensure early trials. Carr v. State, 934 N.E.2d 1096, 1100 (Ind. 2010) ("The Rule does not involve assessment or attribution of any fault or accountability on the part of the State, but generally imposes upon the justice system the obligation to bring a defendant to trial within a set time period . . . ."). The rule places an affirmative duty on the State to bring [the defendant] to trial and allows for limited exceptions to that timeframe. See Cook [v. State], 810 N.E.2d [1064, 1065 (Ind. 2004)].

Id. at 1151. "We may not attribute delays in proceedings to trial to the defendant where the record is void regarding the reason for the delay." Id. (quotation omitted).

The following dates and occurrences are relevant to our analysis:

- September 26, 2001: the State charges Sickels with three counts of nonsupport of a dependent, each as a Class C felony.

- March 20, 2002: Sickels is arrested in Michigan as a fugitive based on the Elkhart Superior Court's outstanding bench warrant. Michigan authorities do not inform Indiana authorities of Sickels' arrest.

- April 19, 2002: Sickels tells the Michigan trial court that he is "working on turning self in [and] making pymts w/Elkhart." Appellant's App. at 51.

- July 15, 2002: Sickels is released by the Michigan court due to the lack of an Indiana governor's warrant.

- July 20, 2005: Sickels is arrested in Michigan as a fugitive. Michigan authorities do not inform Indiana authorities of the arrest.

- September 20, 2005: Sickels tells the Michigan court that his "atty [is] working on Elkhart Cty case." Id. at 54.

- October 20, 2005: Sickels is released by the Michigan court due to the lack of a governor's warrant and after he tells the court that his "atty expects to have [the case] handled by next week. Pymts have been made." Id.

- September 26, 2006: Sickels is again arrested in Michigan as a fugitive.

- October 2, 2006: Michigan authorities inform Indiana authorities of Sickels' arrest.

- November 15, 2006: An Indiana governor's warrant[8] is issued but "never served." Id. at 67.

- December 28, 2006: Michigan releases Sickels due to the lack of a governor's warrant.

- October 27, 2008: The Elkhart County prosecutor obtains an additional governor's warrant, but that warrant was "not served." Id.

- July 27, 2010: Sickels is again arrested in Michigan. Michigan authorities immediately serve Sickels with an outstanding Indiana governor's warrant and inform authorities in Elkhart County.

- July 30, 2010: Sickels is brought into Indiana and placed into custody by the Elkhart County Sheriff.

- August 4, 2010: The Elkhart Superior Court holds an initial hearing.

- October 5, 2010: Sickels files his motion to discharge pursuant to Criminal Rule 4(C).

- January 10, 2011: The trial court holds Sickels' bench trial and finds him guilty of each of the State's three allegations.

On appeal, Sickels asserts that his first arrest in Michigan in 2002 is the beginning of the Rule 4(C) timeframe. In response, the State contends that his extradition to Indiana in 2010 is the proper starting point. We agree with the State.

"[A] defendant's speedy trial rights in Indiana do not commence until he is within the jurisdiction and exclusive control of Indiana authorities." Sweeney v. State, 704 N.E.2d 86, 100 n.27 (Ind. 1998).[9] In Sweeney, our supreme court considered whether the

---

[8] All references in this opinion to the State's three governor's warrants are based only on the information disclosed by the parties to the trial court. The State did not present the governor's warrants themselves to the trial court, and we, therefore, do not consider those documents. "[N]ew evidence may not be submitted to the court for the first time upon appeal." Saler v. Irick, 800 N.E.2d 960, 970 n.7 (Ind. Ct. App. 2003). This distinction is largely immaterial, however, since the existence and general contents of the three governor's warrants were made clear to the trial court by both parties.

[9] We note that this authority is not cited by the State in its Appellee's Brief.

State had complied with Rule 4(C) and had brought the defendant to trial within one year. The State had first charged the defendant in August of 1992, while he was a federal inmate in Kentucky. The defendant was brought to Indiana pursuant to those charges on November 9, 1992, but the trial court ordered him returned to Kentucky and, as a result, the State dismissed its charges. Later, the State refiled its charges, the defendant was brought back into Indiana, and the trial court concluded that it had jurisdiction over him.

On appeal, the defendant sought to have his convictions vacated for the State's alleged failure to prosecute a speedy trial. Our supreme court disagreed with the defendant and held that he was not denied a speedy trial under Rule 4(C). The court held that the Rule 4(C) clock began when the defendant had been brought within Indiana's jurisdiction and control: "Defendant being brought to Indiana is equivalent to an 'arrest' and thus the one[-]year period for determining a violation of Crim. R. 4(C) commence[d] on November 9, 1992." Id. at 100.

Following that authority, we must conclude that Sickels' right to a speedy trial under Rule 4(C) commenced on July 30, 2010, the date he was finally within the jurisdiction and exclusive control of Indiana authorities. See id. Pursuant to Rule 4(C), the one-year clock begins to tick "from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later." And according to our supreme court, the defendant "being brought to Indiana is equivalent to an 'arrest' " under Rule 4(C). Therefore, the latter date of July 30, 2010, the date when Sickels was brought to Indiana, is the beginning of the Rule 4(C) timeframe. And

17

because Sickels was brought to trial on January 10, 2011, less than one year after that "arrest," there is no Rule 4(C) violation.

Still, Sickels contends that other supreme court case law mandates his release. Specifically, he references Greengrass v. State, 542 N.E.2d 995 (Ind. 1989). In that case, the defendant was arrested in New York in 1980 based on the State's charges. However, upon learning of the defendant's arrest, "the State of Indiana refused to complete extradition proceedings at that time." Id. at 995. The defendant was later arrested in 1986 in New Jersey and then extradited to Indiana. Our supreme court discharged the defendant under Rule 4(C), stating: "appellant . . . first was arrested on that charge on November 6, 1980. The fact that the State chose not to extradite appellant at that time effected a delay in his trial with which he cannot be charged." Id. at 996. Thus, Greengrass imposes upon the State "a duty ancillary to the State's affirmative duty to try a defendant within one year." Alley v. State, 556 N.E.2d 15, 17 (Ind. Ct. App. 1990), trans. denied. That is, where the State has actual knowledge of a defendant's arrest in another state based on Indiana charges, the State must act on that knowledge.

Greengrass is not controlling. Unlike in Greengrass, here the State never "refused to complete extradition proceedings" once it learned of Sickels' presence in Michigan. Greengrass, 542 N.E.2d at 99; see Blasko v. State, 920 N.E.2d 790, 792 (Ind. Ct. App. 2010), trans. denied. Indeed, the State thrice issued governor's warrants in an attempt to have Sickels brought into Indiana. While it is not clear from the record why the first two of those three attempts failed, the answer to that question is immaterial. The State

actively sought to have Sickels extradited by Michigan, and only once it was successful did the Rule 4(C) timeline begin.

We acknowledge that the delay between the filing of the State's charges and Sickels' "arrest" by Indiana authorities was nearly a decade. Without referring to Sweeney, the State's principal argument on appeal is that the delay in bringing Sickels to trial is not chargeable to the State. Specifically, the State contends that

> the delay should not be charged to the State. Defendant knew of the charges six months after they were filed, but he deliberately lied to the Michigan court [in 2002 and 2005] and made no effort to address them for years. When Indiana discovered Defendant's whereabouts [in 2006], Defendant refused to waive extradition, and Indiana was forced to go through the extradition process three times in order to bring him to trial.
>
> This is not a situation where Indiana refused to extradite a defendant, or there was any inaction on the part of the State. . . .

Appellee's Br. at 23-24 (citations to the record omitted).

The State's argument is misplaced.[10] "It has not been uncommon for lawyers and courts to address Rule 4 claims in part by considering whether delay should be 'chargeable to the State,' but the role of the State is an irrelevant consideration in the analysis." Carr, 934 N.E.2d at 1100 (cited in Curtis, 948 N.E.2d at 1151). "The Rule does not call for any attribution of delay to the State but only for delay attributable to the defendant or insufficient time due to court congestion or emergency." Id. Thus, the

---

[10] Neither are we persuaded by the State's suggestion that Sickels could have or should have turned himself over to Indiana officials. It is well established that:

> [t]he duty to bring a defendant to trial within one year is an affirmative one which rests with the State. State v. Smith, 495 N.E.2d 539, 541 (Ind. Ct. App. 1986). The defendant has no obligation to remind the court of the State's duty, nor is he required to take any affirmative action to see that he is brought to trial within the period. Id.

Leek v. State, 878 N.E.2d 276, 277 (Ind. Ct. App. 2007).

State's claim that the delay in Sickels' trial is not chargeable to it or is not its fault under Rule 4(C) is a nonstarter.

But neither does Sickels' claim that the near-decade delay is dispositive under Rule 4(C) carry weight. The delay is an unfortunate circumstance. But under Rule 4(C) and Sweeney, the one-year clock did not begin to run until Sickels was within Indiana's jurisdiction and under the exclusive control of Indiana authorities. Sweeney, 704 N.E.2d at 100 n.27. And any exceptions to that timeline provided by Greengrass do not apply here. Accordingly, we conclude that the trial court did not abuse its discretion when it denied Sickels' motion for discharge under Indiana Criminal Rule 4(C).

**Issue Three: Sixth Amendment Right to Speedy Trial**

Sickels also challenges the delay of his trial under the Sixth Amendment.[11] The Sixth Amendment, applicable to the states via the Fourteenth Amendment, provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. As this court has discussed:

> [T]he question of whether a defendant's constitutional right to a speedy trial has been violated presents a much more complex question than whether the Rule 4(C) speedy trial provision has been violated; the constitutional test requires the balancing of multiple factors and there is no point at which discharge due to delay is automatically mandated, while Rule 4(C) provides definitive, relatively simply calculated deadlines, based upon whether any delays are attributable to a defendant . . . .

Danks v. State, 733 N.E.2d 474, 490 (Ind. Ct. App. 2000), trans. denied.

Under the Sixth Amendment:

---

[11] Sickels raises the same argument under Article I, Section 12 of the Indiana Constitution. The Indiana constitutional analysis is identical to the federal constitutional analysis, and we, therefore, do not delineate the two in our discussion. Crawford v. State, 669 N.E.2d 141, 145 (Ind. 1996).

When a defendant's speedy trial rights have been implicated, we undertake a balancing test mandated by Barker v. Wingo, 407 U.S. 514, 92 (1972), in which the conduct of both the State and the defendant are weighed. We consider such factors as the length of the delay, reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant. Id., 407 U.S. at 530; Fortson v. State, 269 Ind. [161,] 168, 379 N.E.2d [147,] 152 [(1978)].

Crawford v. State, 669 N.E.2d 141, 146 (Ind. 1996).

The parties agree that the date the State filed its information against Sickels, September 26, 2001, is the trigger date for the constitutional analysis. See United States v. Marion, 404 U.S. 307, 325 (1971). The ensuing delay of more than nine years until Sickels' trial implicates his Sixth Amendment rights, and we proceed to consider the factors of the Barker balancing test. See, e.g., Fisher v. State, 933 N.E.2d 526, 530 (Ind. Ct. App. 2010).

Again, the length of the delay here is more than nine years, which generally weighs in favor of Sickels. But the reasons for the delay are not wholly attributable to the State. According to the Supreme Court of the United States,

different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 530.

Here, from the date of his indictment until his first arrest in Michigan in 2002, the delay in bringing Sickels to trial cannot be weighed against the State since Sickels was outside of the jurisdiction and the State was unaware of his location. As the trial court

found, the Elkhart County Prosecutor was not notified of either Sickels' 2002 or 2005 arrest. Rather, the prosecutor was first advised of Sickels' presence in Michigan following Sickels' 2006 arrest.

Moreover, the delay in bringing Sickels to trial between his 2002 and 2006 arrests in Michigan is attributable to Sickels, who twice told a Michigan court that he was working with Elkhart officials on the State's charges and expected them to be resolved soon. Those statements were false and likely caused the Michigan court to not follow up with Indiana officials regarding the Indiana charges. In other words, since at least 2002 Sickels knew of his very substantial support arrearage, and that the State of Indiana wanted him for prosecution. While he had no duty to turn himself in, he took affirmative steps to frustrate the State's attempt to call him to account.

Following Sickels' arrest in 2006, Michigan officials informed Indiana officials of his presence in Michigan. Indiana officials then sought governor's warrants to have Sickels extradited to Indiana. Again, it is not known why the first two governor's warrants were not served on Sickels. Given that void in the record, we conclude that the reason for the delay between Sickels' 2006 arrest[12] and his eventual extradition in 2010 is neutral. Nonetheless, we assign slight weight for that delay against the State, "since the ultimate responsibility for such circumstances must rest with the government" and there is no evidence that definitively shows that Michigan authorities, rather than Indiana

---

[12] In his brief, Sickels states that his former wife wrote a letter to the trial court in October 2010 in which she recalled the Elkhart prosecutor telling her that he would not pursue extradition because "jails were for real criminals." Appellant's Br. at 32. In light of the three governor's warrants obtained by the Elkhart County prosecutor, the trial court plainly did not credit that letter and neither do we.

authorities, were the parties ultimately responsible for the failure to serve the first two governor's warrants. See id.

Finally, the delay from Sickels' extradition in July of 2010 until his trial in January of 2011 was due to nothing more than the "ordinary procedures for criminal prosecutions." See Crawford, 669 N.E.2d at 146 (citing United States v. Ewell, 383 U.S. 116, 120 (1966)). That is a valid reason for delay and is not assignable to either the State or Sickels. On balance, we conclude that the delays between the filing of the charging information in 2001 and Sickels' conviction in 2011 weighs more heavily against Sickels than for him.

We next note that Sickels did assert his right to a speedy trial in October of 2010 when he filed his motion for discharge under the Sixth Amendment and Criminal Rule 4(C). He again asserted his right to be tried in a speedy fashion after the trial court denied his motion for discharge. Accordingly, this factor weighs in Sickels' favor.

Finally, we examine any prejudice to Sickels that was caused by the alleged delay in trying him. "Prejudice is presumed if the delay exceeds the limitations period for the offenses with which the defendant is charged." Bowman v. State, 884 N.E.2d 917, 921 (Ind. Ct. App. 2008), trans. denied. Sickels was charged with three Class C felonies, each with a limitations period of five years. Ind. Code § 35-41-4-2(a)(1). Therefore, the burden is on the State to show that Sickels was not prejudiced by the delay.[13] Bowman, 884 N.E.2d at 921.

---

[13] The State contends that the proper standard in this appeal is to require Sickels to prove that he was actually prejudiced by the delay. See, e.g., Fisher v. State, 933 N.E.2d 526, 532 (Ind. Ct. App. 2010) ("Indiana courts have placed the burden of demonstrating actual prejudice on the defendant to prove a speedy trial deprivation."). We acknowledge the State's argument that Bowman and similar cases should

As our supreme court has stated:

> We make this examination mindful of the interests the speedy trial right was designed to protect: prevention of oppressive pretrial incarceration; minimization of anxiety and concern of the accused; and limiting the possibility that the defense will be impaired. Barker v. Wingo, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." Id.

Id.

The State has met its burden of showing that Sickels was not prejudiced by the delay in prosecution. First, the delay in Sickels' prosecution did not result in oppressive pretrial incarceration, a point that Sickels does not dispute on appeal, at least not cogently. And given Sickels' admitted regular entry into Elkhart County and contact with family there during the time period in question, despite the State's charges, we are confident that Sickels did not suffer under "a cloud of suspicion and anxiety." See Appellant's App. at 68; Appellant's Br. at 35.

Further, and most significantly, we are persuaded that Sickels' defense at his trial was not seriously prejudiced by the delay. At trial, "Sickels and his witness . . . testified that they had provided his children with clothing, meals, and had babysat the boys. They were unable to recall the exact dates or amounts of the money spent on the boys." Appellant's Br. at 34-35. But Sickels has never suggested that he provided anything more than a token amount of in-kind support for his children. See Geans, 623 N.E.2d at 437 ("[A] parent may escape criminal liability by . . . providing a dependent child with

---

not apply to defendants whose delay involved out-of-state extradition proceedings. Nonetheless, given the circumstances in this case we need not expressly resolve this issue. As discussed below, assuming for the sake of argument that the burden is on the State to rebut a presumption of prejudice, the State has met its burden.

food, clothing, shelter or medical care. However, to escape criminal liability the parent must provide more than a mere token amount of support."). Indeed, Sickels himself testified that he did not make any child support payments during the time in question and that he had "no defense" to the State's allegations. Transcript at 60. Thus, the State has met its burden of rebutting the presumption of prejudice against Sickels.

In sum, two of the four Barker factors—the length of the delay and Sickels' assertion of his right to a speedy trial—weigh in favor of Sickels. However, the other two factors—the reasons for the delay and prejudice—weigh against him. We have traditionally placed the greatest weight on whether the defendant has been prejudiced by the delay. See Bowman, 884 N.E.2d at 921. We also place more weight on the fact that Sickels' false statements to the Michigan trial court early in the timeframe in question likely caused the delay to be greatly extended. Therefore, balancing the four Barker factors, we conclude that Sickels' right to a speedy trial has not been violated.

### Issue Four: Personal Jurisdiction

Sickels next contends that the trial court lacked personal jurisdiction over him for various reasons. Sickels appeared before the trial court but did not present this issue to that court. As such, we hold that he waived the question of the court's jurisdiction over his person.

In support of his attempt to raise this issue for the first time on appeal, Sickels claims "[a] judgment that is void for lack of personal jurisdiction may be collaterally attacked at any time." Appellant's Br. at 15 (citing Harris v. Harris, 922 N.E.2d 626, 633 (Ind. Ct. App. 2010)). That statement is indeed found in this court's opinion in Harris.

25

But Sickels takes the statement out of context, as it is not intended to be read with the breadth with which he now attempts to apply it.

As this court explained in Harris, personal jurisdiction is waivable but, under a limited (and risky) set of circumstances, may be collaterally attacked:

> A judgment rendered without personal jurisdiction is void. Hill v. Ramey, 744 N.E.2d 509, 512 (Ind. Ct. App. 2001) (citing Stidham v. Whelchel, 698 N.E.2d 1152, 1156 (Ind. 1998)). A defendant can waive the lack of personal jurisdiction and submit himself to the jurisdiction of the court if he responds or appears and does not contest the lack of jurisdiction. Id. at 512 n. 7 (citing Stidham, 698 N.E.2d at 1155). The Indiana Supreme Court has observed that a claim of lack of personal jurisdiction may be waived, but that waiver "must be by the person holding the rights." Stidham, 698 N.E.2d at 1155-1156. The waiver doctrine does not mean that any party that has the power to waive a defense will be found to have done so. Id. at 1156. The fact that a defendant is served with a summons in another state does not demonstrate waiver. See id. at 1153-1156 (concluding that the defendant did not waive his defense of lack of personal jurisdiction where the defendant had received service of process in another state by certified mail). Indeed, the Court has recognized that "[i]t is a bold move, but an option available to a nonresident is to ignore a pending proceeding and take the risk that a subsequent challenge to personal jurisdiction will prevail." Id. at 1156 (citing Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.")).
>
> A judgment that is void for lack of personal jurisdiction may be collaterally attacked at any time. Id. . . .

922 N.E.2d at 632-33 (emphasis added).

As that discussion makes clear, only when a nonresident ignores the judicial proceedings before the trial court may he later collaterally attack that judgment on the grounds of personal jurisdiction. That did not happen here. Rather, Sickels appeared

26

before the trial court and never contested its jurisdiction over his person. He may not do so now for the first time on appeal. This issue is waived.

**Issue Five: Sentencing**

Finally, Sickels challenges his sentence on several different grounds. Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).[14] "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. (quotation and citation omitted). A trial court may abuse its discretion by failing to enter a sentencing statement, entering findings of aggravating and mitigating factors unsupported by the record, omitting factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. Id. at 490-91. "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. The appellate court may review both written and oral statements in order to identify the findings of the trial court. See McElroy v. State, 865 N.E.2d 584, 589 (Ind. 2007).

Sickels' first argument is not properly before this court. In his first argument, Sickels contends that the trial court's calculation of his arrearage amount is erroneous. But Sickels did not object to the State's evidence of his arrearage, and we will not

---

[14] We note that Sickels does not suggest that he is entitled to the protections of Blakely v. Washington, 542 U.S. 296 (2004). Accordingly, he has waived any possible claim he may have had under that decision. See Smylie v. State, 823 N.E.2d 679, 689-90 (Ind. 2005).

consider the legitimacy of that evidence for the first time on appeal. This argument is waived.

Sickels next argues that the trial court improperly ordered him to pay restitution. At the sentencing hearing, the trial court stated that "restitution" in the amount of "$86,420" is to be made to "Ms. Sickels, the victim in the case." Transcript at 87. But in its written sentencing order, the court states: "Arrearage in the amount of $84,420.00 as of 2/8/11 **reduced to judgment** in favor of Kathy L. Sickles [sic], civil cause number 20D03-9107-DR205." Appellant's App. at 118 (emphasis original). These two statements are unclear in three respects and require a remand for clarification.

First, the trial court's sentencing order states that Sickels must pay "$84,420," but at the sentencing hearing the trial court recognized that Sickels' arrearage was "$86,420." Compare Appellant's App. at 118 with Transcript at 87. While the $2,000 discrepancy appears to be a typographical error, especially in light of the State's undisputed evidence of Sickels' arrearage, nonetheless the prudent course is for this court to remand this limited issue for the trial court to clarify Sickels' arrearage. On remand, the trial court shall consider only whether $84,420, $86,420, or an amount in-between is the correct arrearage.

Second, pursuant to Indiana law, "in addition to any sentence imposed" for a criminal offense the trial court is authorized to order "restitution to the victim of the crime." I.C. § 35-50-5-3. The amount of restitution ordered must reflect the actual loss suffered by the victim. Myers v. State, 848 N.E.2d 1108, 1109 (Ind. Ct. App. 2006). But Kathy is not the victim of Sickels' crimes. His children are. It is generally established

28

that child support payments are for the benefit of the child, not for the benefit of the parent. See Haley v. Haley, 771 N.E.2d 743, 752 (Ind. Ct. App. 2001). As such, the court's order for Sickels to pay restitution to Kathy as "the victim" is erroneous. See Transcript at 87.

Finally, the court's two statements alternatively refer to Sickels' payment as either "restitution" or as a civil judgment. See Transcript at 87; Appellant's App. at 118. While restitution is a proper criminal penalty, civil court is the proper venue to adjudicate civil judgments. See Haltom v. State, 832 N.E.2d 969, 972 (Ind. 2005). Thus, on remand the court shall correct its sentencing order and other documents to reflect only restitution.

Sickels next contends that the trial court abused its discretion when it ordered his sentences to run consecutively. This argument appears two-fold: on the one hand, Sickels states that the trial court's sentencing statement is not sufficiently articulated for purposes of appellate review. On the other, Sickels contends that "[t]he court's statement supports the fact that [a ten-year] sentence is being imposed but does not support the imposition of consecutive sentences." Appellant's Br. at 56. Failure to enter a sentencing statement is an abuse of discretion, and a single aggravating factor is sufficient to justify the imposition of consecutive sentences. Anglemyer, 868 at 490; Forgey v. State, 886 N.E.2d 16, 23 (Ind. Ct. App. 2008). Having reviewed the record, we conclude that the court's sentencing statement is clearly sufficient. We further conclude that the court's consideration of the fact that Sickels "blatantly failed to pay [his] child support" supports the imposition of consecutive sentences, as does the presence of multiple victims. See Transcript at 88.

Lastly, Sickels contends that his multiple sentences violate double jeopardy. For the reasons discussed in Issue One, supra, we disagree and conclude that there has been no double jeopardy violation in this case.

## Conclusion

We affirm Sickels' convictions, and we affirm his sentence in part. However, we must remand the restitution order to the trial court with instructions that the court clarify its order in a manner not inconsistent with this opinion.

Affirmed in part and reversed and remanded in part.

RILEY, J., and MAY, J., concur.